This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant David Pettyjohn has appealed from orders of the Lorain County Common Pleas Court that (1) found him guilty of five counts of gross sexual imposition and two counts of intimidation, (2) sentenced him to an aggregate of eighteen years in prison, and, (3) classified him as a sexual predator. This Court affirms.
 I.
From 1992 to 1998, Lorain County Children's Services (LCCS) placed approximately ten foster children in the home of Defendant and his then-wife Carmen.[1] During October 1997, Angel Durr, one of the foster children in the Pettyjohns' home, alleged that Defendant had sexually abused her. As a result of the allegations, LCCS and the Lorain Police Department removed the five foster children then in the care of the Pettyjohns from their home. Following further investigation, the allegations of sexual abuse were determined to be unsubstantiated. Two of the children who denied that Defendant had engaged in any inappropriate behavior, Danielle and Latrice Cavin, were subsequently returned to the Pettyjohns' home.
Less than a year later, in September 1998, Latrice told Carmen that Defendant had sexually molested her. Carmen then called LCCS and asked that they remove the children from their home. LCCS, with the assistance of the Huron County Sheriff's Department,[2] escorted the children out of the Pettyjohn residence. In the ensuing investigation, police recovered from the Pettyjohns' home several articles, including washcloths and a pair of men's underwear, that Latrice described to investigators as containing Defendant's semen from his sexual encounters with her.
On September 28, 1998, Defendant was indicted by the Lorain County Grand Jury on nine counts of rape in violation of R.C. 2907.02(A)(1)(b), nine counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), and three counts of intimidation in violation of R.C. 2921.04(B). Defendant was arrested two days later.
Defendant's jury trial commenced on September 25, 2000. At trial, Latrice testified that Defendant began abusing her at age nine, and had continued the abuse almost every weekend until she was removed from the Pettyjohns' home during September 1998 at age twelve. Latrice stated that she had lied to investigators during 1997, when she denied that Defendant was sexually abusing her, because she was afraid and Defendant had told her not to say anything. Latrice further testified that Defendant had touched her vaginal area and breasts, and made her perform oral sex on him. She explained that Defendant threatened harm to her, her family, Carmen's family, and to separate her from her sister if she told anyone about the abuse.
Carmen also testified at Defendant's trial, as did Latrice's sister Danielle. These witnesses stated that Defendant had threatened the safety of Carmen and her family, sometimes with a shotgun. Carmen testified that Defendant slapped her when she confronted him about Latrice's initial allegations of abuse.
The State also presented the testimony of two forensic scientists, who established that the underwear recovered from the Pettyjohns' home belonged to Defendant and contained seminal fluid. Additional trial testimony was provided by a professional counselor who had interviewed Latrice, as well as an LCCS worker and a law enforcement officer familiar with the investigation of the alleged abuse.
At the close of the case against him, Defendant moved to acquit on counts one through four (all counts of rape) and counts nineteen through twenty-one (all counts of intimidation). The trial court granted the motion with respect to count nineteen, and denied the motion with respect to all other counts. Following deliberations, the jury returned verdicts of not guilty on all counts except five counts of gross sexual imposition and two counts of intimidation, for which Defendant was convicted.
The trial court sentenced Defendant to the minimum of one year on one count of gross sexual imposition, two years on another count of the same offense, and three years on each of the remaining five counts. Defendant was ordered to serve these sentences consecutively, for a total of eighteen years imprisonment. The trial court also adjudicated Defendant a sexual predator. Defendant timely appealed, asserting two assignments of error.
 II. Assignment of Error Number One [Defendant] was denied effective assistance of counsel in violation ofArticle I, Section 10 of the Ohio Constitution and the Sixth and[Fourteenth] Amendments of the Constitution of the United States.
In his first assignment of error, Defendant has claimed that he was denied effective assistance of counsel in violation of his state and federal constitutional rights. Specifically, Defendant has asserted that his trial counsel's failure to challenge for cause the impaneling of Juror Number Eight rendered the assistance of his counsel ineffective.
Defendant's objection to the impaneling of Juror Number Eight was based on certain responses elicited from that juror during voir dire. In particular, Defendant has pointed to statements by Juror Number Eight that, as a result of his having personally witnessed child rapes while on military assignment in Kosovo, he would have to "wrestle with" whether the standard of proof should be less for the charge of rape than for other crimes.
While Juror Number Eight was not removed immediately following this admission, the record reveals that this juror was in fact subsequently removed for cause by the trial court. After certain of his responses indicated a predisposition to believe testimony of law enforcement officers over other witness testimony, the trial court excused and replaced the original Juror Number Eight, well before the commencement of trial.
Defendant's argument that his rights were violated by the failure of counsel to strike Juror Number Eight for cause is therefore without merit. Defendant's first assignment of error is overruled.
 Assignment of Error Number Two The trial court deprived [Defendant] of procedural due process inviolation of the Constitutions of the State of Ohio and theUnited States.
For his second assignment of error, Defendant has asserted that he was denied procedural due process in violation of his federal and state constitutional guarantees. Defendant has advanced four separate components to this argument. This Court will address each in turn.
 A.
The trial court erred to the prejudice of [Defendant] in failing to dismiss Juror Number Eight for cause.
Defendant first argued that the trial court erred by failing to dismiss Juror Number Eight for cause. As this Court has already observed, the original Juror Number Eight found objectionable by Defendant was excused for cause and replaced prior to the commencement of trial. Defendant's first argument is not well taken.
 B.
The trial court erred to the prejudice of [Defendant] when it denied trial counsel's [Crim.R. 29] motion.
For his second argument, Defendant has claimed that the trial court's denial of his Crim.R. 29 motion with respect to count twenty-one of the indictment, to wit: intimidation of his wife Carmen, constitutes reversible error. This Court disagrees.
Crim.R. 29 allows a trial court to order a judgment of acquittal if the evidence is insufficient to sustain a conviction. Crim.R. 29. This Court reviews a trial court's denial of a Crim.R. 29 motion for acquittal to determine "whether, after viewing the evidence in a light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Moreover, pursuant to Crim.R. 29(A), "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Seiber
(1990), 56 Ohio St.3d 4, 13, quoting State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
The crime of intimidation is set forth at R.C. 2921.04(B):
No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness.
In the present case, there was sufficient evidence presented at trial for the jury to find that the Defendant had intimidated his wife into remaining silent about the abuse of Latrice. Carmen testified that during arguments with Defendant he would sometimes retrieve a shotgun kept in the home and tell her to "shut up." She further stated that she did not reveal to detectives during 1997 any of the problems in the Pettyjohn home because she feared physical injury to her or her family. Carmen testified that these fears were based on prior occasions when Defendant slapped her and Defendant's threats against her safety and that of her family.
In addition, the testimony of Latrice's sister Danielle supports the jury's finding of Defendant's guilt on the charge of intimidation. Danielle testified that Defendant repeatedly threatened to kill Carmen, sometimes brandishing a gun, and that Carmen appeared scared of Defendant.
In sum, the testimony of Carmen and Danielle supports the jury's finding that Defendant's intimidation of Carmen deterred her from coming forward and telling LCCS or law enforcement what Latrice had confided to her regarding the alleged sexual abuse by Defendant. Therefore, after viewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found beyond a reasonable doubt that Defendant intimidated Carmen. Defendant's second argument is without merit.
 C.
The trial court erred to the prejudice of [Defendant] when it sentenced him to consecutive terms.
For his third argument, Defendant has asserted that the trial court erroneously sentenced him to consecutive sentences that exceeded the statutory minimums, because (1) the trial court failed to consider the mitigating factors enumerated at R.C. 2929.12 and 2929.14, and (2) Defendant's sentence was so disproportionate to the offenses committed as to amount to cruel and unusual punishment in violation of theEighth Amendment of the United States Constitution and Article I, Section 9 of the Ohio Constitution. This Court disagrees.
R.C. 2929.12(A) confers upon courts discretion over how to most effectively comply with the purposes and principles of sentencing established at R.C. 2929.11. R.C. 2929.12(A) further directs that in the exercise of such discretion, courts shall consider the applicable aggravating and mitigating factors specified in the statute, as well as factors pertinent to the likelihood of the particular defendant's recidivism.
At Defendant's sentencing hearing, the trial court noted the mitigating factor that Defendant apparently did not have a prior criminal record. The trial court determined, however, that any mitigating factors were outweighed by Defendant's position of trust as a foster parent, and his exacerbation of the inherent difficulties of the foster children under his care. This Court therefore concludes that the trial court did not abuse its discretion in considering the aggravating and mitigating factors set forth in R.C. 2929.12.
In addition to the guidelines set forth in R.C. 2929.12, R.C. 2929.14(B) provides:
 [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
In interpreting R.C. 2929.14(B), the Ohio Supreme Court has held that a trial court is required to place its findings and reasons relevant to sentencing in the "record of the sentencing hearing."State v. Edmonson (1999), 86 Ohio St.3d 324, 326. As this Court recently noted, "the rationale of Edmonson [has been extended] to require the trial court to make findings and give its reasons to support the imposition of consecutive sentences." State v. Riggs
(Oct. 11, 2000), Summit App. No. 19846, unreported, at 2.
At the conclusion of the sentencing proceeding, the trial court stated on the record its finding that it was imposing sentences in excess of the statutory minimums because minimum sentences in this case would both demean the seriousness of Defendant's conduct and would not adequately protect the public from future conduct by the Defendant or others. The trial court further stated that the imposition of consecutive sentences was necessary to protect the community from future crime, as well as to serve as a deterrent to other foster parents. The trial court thereby made the findings pursuant to Edmonson and Riggs necessary to impose greater than the minimum sentences, and to run those sentences consecutively. Accordingly, this Court concludes that the trial court did not abuse its discretion in imposing on Defendant consecutive sentences that exceeded the statutory minimums.
Defendant has also argued that the sentences imposed by the trial court were so disproportionate to the offenses committed as to violate federal and state constitutional prohibitions against cruel and unusual punishment. As a general rule, a sentence within the terms of a valid statute cannot amount to cruel and unusual punishment. McDougle v.Maxwell, Warden (1964), 1 Ohio St.2d 68, 69. To be in violation of the constitutional guarantees against cruel and unusual punishment, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." State v. Weitbrecht (1999),86 Ohio St.3d 368, 371, quoting McDougle, 1 Ohio St.2d at 70.
In the instant case, all eight counts for which Defendant was convicted carried a range of one to five years, pursuant to R.C. 2929.14(A)(3). The trial court sentenced Defendant to the minimum of one year on one count; two years on another count; and three years on each of the remaining five counts. As the sentences were within the statutorily permissible range, and indeed, were at the lower to middle end of that range, this Court concludes that the sentences of one, two, and three years for each of the offenses of which Defendant was convicted does not amount to cruel and unusual punishment.
Moreover, the trial court's imposition of consecutive sentences for all seven counts, for an aggregate of eighteen years, does not amount to a constitutional violation. The trial court could have sentenced Defendant, within the statutorily permissible range, to an aggregate of thirty-five years. It instead chose to apply lesser sentences on each count. In running these lesser sentences consecutively, the trial court manifested its intention that Defendant be punished separately for each count. Given the aggravating factors acknowledged by the trial court — in particular, Defendant's position as foster parent to Latrice this Court concludes that the sentences imposed on Defendant did not violate the constitutional prohibitions against cruel and unusual punishment.
 D.
The trial court erred to the prejudice of [Defendant] when it classified him a sexual predator pursuant to [R.C. 2950].
For his fourth argument, Defendant has advanced four propositions in support of his contention that he was improperly adjudicated a sexual predator pursuant to R.C. 2950. This Court will address each respective point.
 1.
The trial court erred to the prejudice of [Defendant] when it failed to recognize that [Chapter 2950] violates [Defendant's] right to privacy.
First, Defendant has contended that the statutory sexual predator classification and community notification provisions violate his constitutional right to privacy and improperly impinge upon his rights to travel and freedom of association. This Court's decision in State v.Gropp (Apr. 8, 1998), Lorain App. No. 97CA006744, unreported, at 15-16, is dispositive of these issues. In Gropp, this Court held that the notification requirements set forth in R.C. 2950 do not violate these constitutional rights. Id.; see, also, State v. Jones (Dec. 6, 2000), Lorain App. No. 00CA007641, unreported, at 3. Accordingly, Defendant's first argument is without merit.
 2.
The application of [R.C. 2950] violated [Defendant's] rights under theFifth Amendment double jeopardy clause of the Constitution of the United States and Article I, Section 10 of the Ohio Constitution.
For his second argument, Defendant has asserted that the application of Ohio's sexual predator law violates his constitutional rights by imposing multiple punishments for the same offense. The Ohio Supreme Court has specifically rejected this argument:
This court, in [State v. Cook (1998), 83 Ohio St.3d 404], addressed whether R.C. Chapter 2950 is a "criminal" statute, and whether the registration and notification provisions involved "punishment." Because Cook held that R.C. Chapter 2950 is neither "criminal," nor a statute that inflicts punishment, R.C. Chapter 2950 does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions.
State v. Williams (2000), 88 Ohio St.3d 513, 528. Defendant's second argument is therefore rejected.
 3.
The registration and notification requirements of [Chapter 2950] create cruel and unusual punishment in violation of the Constitution[s] of the United States and Ohio.
In his third argument, Defendant has contended that the Ohio sexual predator law violates his constitutional guarantees against cruel and unusual punishment. As previously noted, however, the Ohio Supreme Court has held that the registration and notification provisions of R.C. 2950 do not involve "punishment." Cook, 83 Ohio St.3d at 417. Moreover, this Court has previously determined that the registration and notification requirements of R.C. 2950 do not constitute cruel and unusual punishment. State v. Steckman (Feb. 9, 1999), Lorain App. No. 97CA006996, unreported, at 8. Defendant's third argument must therefore fail.
 4.
The trial court erred to the prejudice of [Defendant] when it found [Defendant] to be a sexual predator even though the State failed to show by clear and convincing evidence that [Defendant] was likely to engage in the future in one or more sexually oriented offenses.
Lastly, Defendant has maintained that the State failed to meet its burden of establishing by clear and convincing evidence Defendant's status as a sexual predator. This Court disagrees.
To determine whether the evidence before the trial court was sufficient to support a sexual predator adjudication, this Court must determine whether, if believed, the evidence before the trial court could have convinced a reasonable fact finder that it constituted clear and convincing evidence that defendant was a sexual predator. State v.Cartwright (Nov. 25, 1998), Lorain App. No. 97CA006782, unreported, at 6. Evidence meets the "clear and convincing" standard if it produces in the mind of the factfinder a firm belief or conviction as to the matter to be established. State v. Rexroad (Apr. 1, 1998), Summit App. No. 18539, unreported, at 3. This Court reviews the record of the trial court to determine whether sufficient evidence exists to meet the clear and convincing standard. See Cross v. Ledford (1954), 161 Ohio St. 469,477.
A sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). The definition of "sexually oriented offense" includes the crimes of gross sexual imposition, for which Defendant was convicted. R.C.2950.01(D)(1).
In deciding whether a particular defendant "is likely to engage in the future in one or more sexually oriented offenses," the trial court is to consider particular statutory factors. R.C. 2950.09(B)(2). In this case, the following factors are relevant to Defendant's sexual predator inquiry:
(a) The offender's age;
* * *
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
* * *
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
* * *
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
R.C. 2950.09(B)(2).
Defendant has contended that the trial court failed to consider any of these statutorily enumerated factors in its sexual predator adjudication. However, the trial court specifically based its determination that Defendant was a sexual predator on the evidence of the repetitive nature of the offenses, Defendant's position as a foster parent to the victim, and the fact that the child had little or nowhere else to go. These findings by the trial court correspond to the factors articulated at R.C. 2950.09(B)(2) (a), (c), (h) and (j). Accordingly, the application of these factors to Defendant's case results in sufficient evidence that, if believed, could convince a reasonable factfinder of Defendant's status as a sexual predator. Defendant's fourth argument is not well taken.
As each argument asserted by Defendant to substantiate his contention that he was denied procedural due process in violation of his federal and state constitutional guarantees is without merit, Defendant's second assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ BETH WHITMORE
BATCHELDER, P.J., SLABY, J., CONCUR.
[1] Carmen Pettyjohn, presently known as Carmen Serrano, and Defendant were divorced on July 25, 2000.
[2] During June of 1998, the Pettyjohns moved from their home in Lorain County to Wakeman, in Huron County.