OPINION
Defendant-appellant Robert Arnder appeals his conviction and sentence from the Tuscarawas County Court of Common Plea on ten (10) counts of rape in violation of R.C. 2907.02 and one (1) count of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On February 6, 2001, the Tuscarawas County Grand Jury indicted appellant on one hundred forty seven (147) counts of rape in violation of R.C. 2907.02[1], felonies of the first degree, with sexual predator specifications, one hundred forty five (145) counts of sexual battery in violation of R.C. 2907.03, felonies of the third degree, and two (2) counts of compelling prostitution in violation of R.C. 2907.21, felonies of the third degree. In addition, appellant was indicted on five (5) counts of pandering obscenity involving a minor in violation of R.C.2907.321(A)(1), felonies of the second degree, one count of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(5), a felony of the fourth degree, four (4) counts of pandering sexually oriented materials involving a minor in violation of R.C.2907.322, felonies of the second degree, three (3) counts of endangering children in violation of R.C. 2919.22, felonies of the second degree, and one (1) count of interference with custody in violation of R.C. 2919.23, a felony of the fifth degree. All of the counts of rape and sexual battery involved appellant's daughter. At his arraignment on February 9, 2001, appellant entered a plea of not guilty to the charges contained in the indictment.
Subsequently, appellant, on May 17, 2001, entered pleas of guilty to ten (10) counts of rape in violation of R.C. 2907.02[2], felonies of the first degree, and one (1) count of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1), a felony of the second degree. The remaining counts in the indictment were later dismissed. Thereafter, a sexual predator hearing and sentencing hearing were held on July 19, 2001. The following testimony was adduced at the sexual predator hearing, which was held prior to sentencing.
At the sexual predator hearing, a videotape of A. B.'s[3] deposition testimony was played for the court.[4] During her testimony, A.B., who was 17 years old at the time and who is appellant's daughter, testified that from the time that she was fifteen years old until she was seventeen, appellant took nude pictures of her and her younger sister[5], C.D., and put them on the Internet. The nude pictures were taken by appellant when A. B.'s mother was at work. A. B. also testified that appellant had engaged in a variety of sexual activity with her beginning when she was nine years old and that almost every day from the time she was twelve years old until December of 2000, appellant engaged in sexual intercourse with her. When asked why she never reported the acts to her mother, A. B. responded as follows:
I was afraid.
Q. Why were you afraid?
A. Because he threatened me and was threatening my family.
 Q. When you say your father has threatened you could you be a little more specific as to what exactly he said to you?
 A. Yeah. He said that he won't go to jail a third time over anything, that he would kill all of us and then he's held a knife in my throat, he's tried to catch my house on fire.
Q. When was the knife incident?
A. About five months ago maybe.
 Q. And you said something about a fire. Was that recently?
A. No. Probably this summer.
 Q. The prior incident, can you describe that a little bit for us? What happened?
 A. Yeah, like I was leaving to go see my boyfriend and like he didn't want me to leave, he took some gasoline and put it on this shirt and then he caught it on fire, threw it in my living room.
 Q. And when he caught the shirt on fire and threw it into your bedroom what did you [sic]?
A. I stomped it out.
 Q. Did you ever — withdraw that. Other than the two incidents that you just described was there any other occasions your father threatened you with physical violence?
A. He almost made us wrap around a telephone pole.
Q. I'm sorry, what about a telephone pole?
A. He almost wrapped us around it in a car.
Transcript at 22-23.
A. B. further testified that during a trip to South Carolina, appellant watched her having sex with her boyfriend. Appellant, according to A. B., also frequently touched her breasts and her "private" with his hands. Transcript at 26. When asked whether she had knowledge of anything occurring between appellant and C.D., A. B.'s younger sister, A. B. responded as follows: "I know that he took pictures of her. I think he was just getting ready and stuff cause he knew I was leaving when I was 18." Transcript at 26. At the July 19, 2001, hearing, Demetris Carrouthers, a social worker, testified that A. B. told him that she had engaged in oral sex and masturbation with appellant.
Todd Beeman, the investigating police officer in this matter, testified at the sexual predator hearing that he went to appellant's house to investigate child pornography over the Internet and also after learning of a missing Florida juvenile. According to Officer Beeman, appellant was involved in arranging for the juvenile from Florida to travel to Greece. Beeman, who had a warrant to search appellant's house, found a passport that had been doctored so that the Florida juvenile, age 14, was made to appear as if she were A. B., appellant's daughter. The passport, according to Officer Beeman, was then used by the Florida juvenile to get to Greece. According to the Bill of Particulars, the Florida juvenile had been hired in Greece to engage in sexual conduct for the purposes of creating pornographic movies. During his search, the officer also found several hours worth of videotapes showing appellant engaging in oral and anal sex and masturbation with A. B. In addition, the videotapes showed C. D., A. B.'s younger sister, "posing and being told to undress against her will". Transcript at 33.
When questioned, Officer Beeman testified that appellant, when confronted with the above evidence, indicated that "[A. B.] knew where the bedroom was and if she wanted it she knew where to go." Transcript at 36. According to Officer Beeman, evidence, including appellant's own statement and the videotape, revealed that drugs, including marijuana and speed, and alcohol were involved in the sexual activity. Officer Beeman also testified that appellant had a prior domestic violence conviction and that appellant had engaged in sexual conduct with his daughters while he was on probation for such offense. Officer Beeman further testified that appellant previously had been convicted of felonious assault and receiving stolen property.
Elizabeth Moore, a therapist with the Center for Child and Family Development, testified at the sexual predator hearing regarding the consequences of appellant's sexual abuse on C. D., A. B.'s younger sister. The following is an excerpt from her testimony:
Q. How is [C.D.] now?
 A. [C.D.] has withdrawn more recently and has chosen not to in her mind deal with any of the issues. She's disassociating quite a lot in her therapy and in her normal daily life.
 Q. Based on your training and your experience have you seen in your treatment of [C.D.] any evidence of the consequences of sexual abuse at the hands of her father?
 A. Yes, she exhibits the classic symptomology of a person that's been sexually abused.
Q. Would you please tell the court briefly what you mean?
 A. She's very withdrawn, she's angry, she has a lot of issues with how to appropriately relate to peers, adults, in any situation that's not in her eyes going really well. She superficially on the surface did well at school, outside activities and things but when biological family issues are brought up she curls up in a fetal position and really developmentally goes back to a real young age.
 Q. Do you foresee [C.D.] needing extensive therapy or treatment in the future?
A. Yes.
Transcript at 41-41. In addition, according to Moore, A. B., "will need continued therapy and support throughout her life." Transcript at 44.
Dr. James Eisenberg, a psychologist, testified at the sexual predator hearing that appellant "believed that the Bible would support incest as an ordinary and acceptable sexual behavior". Transcript at 63. According to Dr. Eisenberg, appellant viewed his relationship with A.B. as a consensual relationship.
At the conclusion of the sexual predator hearing, the trial court adjudicated appellant a sexual predator. As memorialized in a Judgment Entry filed on July 19, 2001, the trial court sentenced appellant to ten consecutive eight year prison terms on the rape counts and a consecutive five year prison term on the pandering charge. Thus, appellant was sentenced to an aggregate sentence of eighty-five years in prison.
It is from the trial court's July 19, 2001, Judgment Entry that appellant now prosecutes his appeal, raising the following assignments of error:
 THE EIGHTY-FIVE (85) YEAR SENTENCE VIOLATES R.C. 2929.13 AND THE EIGHTH AMENDMENT.
 THE EIGHTY-FIVE (85) YEAR SENTENCE IS IN VIOLATION OF THE MANDATES OF R.C. 2929.14 AND R.C. 2929.19(B)(2)(C).
 THE EIGHTY-FIVE (85) YEAR SENTENCE VIOLATES THE PROPROTIOINATELY [SIC] REQUIREMENT OF R.C. 2929.11(B).
 THE SENTENCE THE TRIAL COURT IMPOSED IS NOT MANDATED UNDER THE SENTENCING FACTORS.
 THE COURT ERRED IN FINDING THAT ROBERT ARNDER BY CLEAR AND CONVINCING EVIDENCE WILL RE-OFFEND BY COMMITTING SEX OFFENSES.
 I
Appellant, in his first assignment of error, argues that his aggregate eighty-five year sentence violates both R.C. 2929.13(A) and theEighth Amendment. R.C. 2929.13(A) states, in relevant part, as follows:" The sentence shall not impose an unnecessary burden on state or local government resources." In turn, the Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. According to appellant, the trial court's imposition of an eighty-five year sentence both constitutes cruel and unusual punishment and "means that every care of the Defendant, every illness of the defendant, every sickness and surgery, nursing home care will all be borne by the state long after Mr. Arnder is remotely a threat to anyone."
Generally, a sentence within statutory limitations is not excessive and does not violate the constitutional prohibition against cruel and unusual punishment. Broadview Heights v. Baron (2000), 139 Ohio App.3d 729, 748, citing McDougle v. Maxwell (1966), 1 Ohio St.2d 68, 69. "[P]unishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." McDougle, supra., at 69.
In the case sub judice, appellant does not dispute that his sentence was within the permitted statutory range. Upon our review of the record, we cannot say that appellant's eighty-five year aggregate prison sentence was "so disproportionate to the offense as to shock the moral sense of the community." The record in this case reveals that appellant had sexual intercourse with one of his juvenile daughters almost daily over a five year period while threatening her, videotaped himself having sex, including oral and anal sex and masturbation, with one of his daughters and transmitted the same over the Internet, and assisted in arranging for a 14 year old Florida juvenile to be smuggled out of the country to Greece for the purposes of child pornography. In addition, appellant took nude photos of his two daughters. In short, we concur with appellee that "the shear gravity" of appellant's conduct mandates such a lengthy sentence. Moreover, we cannot find that appellant's sentence constitutes an unnecessary burden upon government pursuant to R.C.2929.13(A). The State in this matter clearly has a significant interest in imprisoning those who are engaged in the egregious business of child pornography and in child sexual abuse.
Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in his second assignment of error, argues that his sentence violates R.C. 2929.14 and 2929.19(B)(2)(c). Appellant specifically contends that the trial court failed to state "reasons under R.C. 2929.14
why consecutive sentences are necessary to protect the public from future crimes" and that the trial court "has not even mentioned R.C.2929.19(B)(2)(C) in the sentencing entry".
Revised Code 2953.08 governs an appeal of sentence for a felony and establishes our standard of review. Subsection (G)(2) states as follows: The court hearing an appeal of a sentence under division (A) or (B) or (C) of this section . . . may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for resentencing . . . if it clearly and convincingly finds either of the following:
 (a) That the record does not support the sentencing court's findings. . . .;
That the sentence is otherwise contrary to law.
R.C. 2929.14 governs prison terms. Subsection (E)(4) states as follows: (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crimeor to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
(Emphasis added.)
Further, R.C. 2929.19(B)(2)(C) requires that a trial court state its reasons for imposing consecutive sentences.
The trial court, at the sentencing hearing, stated, in relevant part, as follows:
 I find that you are required based on the consideration of the factors in (E)(4) and (5) of 2929.14 to serve the prison terms consecutively because I conclude that the consecutive service is necessary to protect the public and the victims in this case from future crime and to punish you. Additionally I conclude as a matter of law that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct, your conduct, and to the danger you posed to the public and the victims of these crimes and that I conclude that the harm caused by the multiple offenses in this case was so great or unusual that no single prison term for any of the offenses committed is [sic] a part of a single course of conduct adequately reflects the seriousness of your conduct criminal in nature. Additionally, your history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public and the victims in this case from future crime by you.
Transcript at 106-107. The trial court made the same findings in its July 19, 2001, entry. Thereafter, prior to imposing sentence on appellant, the trial court made the following findings on the record:
 As I was listening to the proceedings today but more especially when I read the PSI, the pre sentencing investigation, and read the comments of your children and of course had what I consider to be the sordid task of having to view the video tapes in this case, the word, the overwhelming impression that keeps coming back to me is I'm suffocating. It's the type of depravity, perversion, twisted, outlook of people that is suffocating in this realm or this milieu if you will. We are charged with an obligation to process cases in this court fairly, justly and I'm trying to do that but I want you to know that it is overwhelming for anybody to view and to read what I've read and viewed.
 Your daughter [C.D.] and your daughter [A.B.] have made comments, they made many comments and you were given an opportunity to read them. I don't know if you have or not but your attorneys had the PSI. These three stand out in my memory. [C.D.] tells us — actually she's telling the world in general I guess, but the officer inquiring in particular, and probably some of the most tragic words I've ever heard — "I don't want to ever remember my childhood."
 [A.B.] is quoted as saying "He ruined my childhood and he deserves to rot in there." I am assuming prison.
 I listened to [A. B.'s] statement read by Dr. Daily and I think that position may have moderated somewhat and I applaud [A.B.], your strength and also that of your sister and your other siblings and your mother. And it will be a tough, tough row to hoe or road to travel but I think you have started along that road and I wish you the very best in your recovery.
 [A.B.] has said "He ruined my childhood and he deserves to rot in there (prison). But for him and his abuse the rest of the family could be together. And apparently that together aspect of the family which is the most critical aspect of any family, is not going to be a reality for this family. And it is that — how shall I say it — it is that which you have wrought in this case, Mr. Arnder. And I have got to believe that whatever sentence I impose is going to pale in comparison to the sentence you have imposed upon yourself in this case. Number one, the loss of the love and affection of your daughters or at least incredible diminution of that love and respect. And the physical — I'm not talking sexual — I'm talking physical closeness of one's family. The greatest comfort that can be given to a parent is going to be something that you won't experience most likely in the future.
 So those are things that impressed me in this case, negatively impressed me if you will. And the sentences relating to what you have done and the wreckage you have brought to your family which is inconceivable for any parent to think, or child, that a parent would do that to those that he has brought into the world and is charged to love and be responsible for. So whatever has caused this behavior in you I hope during the years in the future that you will somehow come to peace recognizing what it was and acknowledging it truthfully. I hope that happens.
 My hope is that your family, [A.B.], is going to be healing as a result of the sentence that's imposed in this case.
Transcript at 110-113.
Upon review of the transcript of the sentencing hearing and the trial court's July 19, 2001, Judgment Entry we find that the trial court has made the findings required by R.C. 2929.14(E)(4) and has stated its reasons for imposing consecutive sentences sufficiently. We further find that the record supports the trial court's findings.
Appellant's second assignment of error is, therefore, overruled.
 III
Appellant, in his third assignment of error, challenges his eighty-five year sentence, arguing that the same violates the proportionality requirement of R.C. 2929.11(B). R.C. 2929.11(B) states as follows: "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." According to appellant, his eighty-five year sentence is grossly excessive in comparison to similar cases.
An appellate court will not review a trial court's exercise of discretion in sentencing when the sentence is authorized by statute and is within the statutory limits. State v. Hill (1994), 70 Ohio St.3d 25,29. See also State v. Jamieson (Aug. 15, 2000), Ashland App. No. 99COA01346, unreported. The trial court, in the case sub judice, followed the sentencing scheme as permitted by R.C. 2929.14(A), which provides that the penalty for a felony of the first degree is a prison term of three to ten years while the penalty for a felony of the second degree is two to eight years. The sentence was within the statutory limits and, for this reason, we will not interfere with the trial court's exercise of discretion. See Jamieson, supra.
Appellant's third assignment of error is, therefore, overruled.
 IV
Appellant, in his fourth assignment of error, maintains that the sentence that the trial court imposed is "not mandated under the sentencing factors". Appellant specifically asserts that his eighty-five years sentence is not in accord with the basic purposes of felony sentence, which, pursuant to 2929.11(A), "are to protect the public from future crime by the offender and others and to punish the offender."
We find that, contrary to appellant's argument, the eighty-five year sentence is in accordance with the purposes of felony sentencing in Ohio. Appellant, in the case sub judice, not only engaged in sexual activity with his daughters over a period of years and played images of the same over the Internet, but also assisted in smuggling a juvenile out of the country for the purpose of producing pornographic movies. Clearly, a lengthy sentence is necessary to both punish appellant for his heinous acts and to protect the public. As noted by appellee, appellant, in the case sub judice, has a significant history of violent criminal conduct and used violence and threats of violence in order to compel compliance.
Appellant's fourth assignment of error is, therefore, overruled.
 V
In his fifth and final assignment of error, appellant contends that the trial court's classification of him as a sexual predator, as defined in R.C. 2950.01(E), was not supported by clear and convincing evidence.
R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or plead guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Appellant was convicted of ten counts of rape and one count of pandering obscenity involving a minor. Rape and pandering obscenity involving a minor, violations of R.C. 2907.02 and R.C. 2907.321, are defined as sexually oriented offenses under R.C. 2950.01(D). In making a determination as to whether an offender should be adjudicated a sexual predator, the trial court shall consider all relevant factors, including, but not limited to all of the factors specified in division (B)(2) of R.C. 2950.09. See R.C. 2950.09(C)(2)(b). Those factors are:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavior characteristics that contribute to the offender's conduct.
The trial court shall determine an offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. 2950.09(C)(2)(b). We review appellant's assignment of error under the manifest weight of the evidence standard set forth in C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
The trial court, both in its July 19, 2001, Journal Entry and on the record at the July 19, 2001, hearing, indicated that it had considered the factors set forth in R.C. 2950.09(B)(2) and that it found all of the factors present except two.[6]
Upon our review of the evidence, we find that the trial court considered the factors set forth in R.C. 2950.09(B)(2) and that there was competent, credible evidence to support the findings that appellant was a sexual predator. At the sentencing hearing, evidence was adduced that appellant raped A.B., his juvenile daughter, almost daily over a five year period and, after videotaping the same, played the images over the Internet and also engaged in oral and anal sex and masturbation with A.B. Appellant also began videotaping his younger daughter as A.B. approached the age of eighteen. According to A.B., appellant threatened his daughters if they did not comply with his sexual desires. In addition, appellant, who has prior convictions for domestic violence, felonious assault and receiving stolen property, utilized drugs and alcohol in order to obtain compliance and helped smuggle a Florida juvenile out of the country by doctoring his own daughter's passport. When confronted with his acts involving his daughters, appellant cited to the Bible to justify his actions and further claimed that his relationship with A. B. was consensual. During the sexual predator hearing, Dr. Eisenberg testified as follows when asked whether there were factors which would indicate that appellant may reoffend:
Q. And could you tell the court what those are?
 A. Yes. I list those in the report and having — Your Honor, a couple of things I might add. I requested the pre-sentence investigation report quite a while ago. I actually just got it last week after my report had been submitted so I'm going to kind of incorporate some of those findings as well as the video tapes that I've seen —
THE COURT: Yes.
 A. — into my conclusion. But I think the following are factors that I think are related to recidivism and I list these. Number one, he admitted to years of sexual intercourse and sexual conduct with his daughter. Pedophilia is clearly a factor that's related to recidivism.
 Number two, there's evidence that he has indeed a arousal pattern towards children that is specific to incest. This is an individual who should not have access to children, particularly his own children, or in the future grandchildren.
 Number three, at the time of the offense Mr. Arnder did not believe prior to his arrest that what he did was wrong. This I think for me, and perhaps for the Court, is one of the more troubling aspects of this case in the sense that he believed that I think there is still some element of belief, that what he did is not criminal sense.
 Q. Would that be because he viewed [A.B.] as a relationship rather than a daughter?
 A. Yes. I think he viewed it as more consensual. I believe he viewed it as biblically acceptable. I think he viewed his behavior —
 Q. You said biblically acceptable. Could you explain to the court why you said that?
 A. Yes. Based on what Mr. Arnder told me. He believed that the Bible would support incest as a ordinary and acceptable sexual behavior.
Transcript at 62-63.
In short, upon review of the record, we find that there was competent, credible evidence to support the trial court's finding that appellant is a sexual predator, as defined in R.C. 2950.01(E), by clear and convincing evidence and that such finding is not against the manifest weight of the evidence.
Appellant's fifth assignment of error is, therefore, overruled.
Accordingly, the Judgment of the Court of Common Pleas of Tuscarawas County is affirmed.
By EDWARDS, J. WISE, P.J. and BOGGINS, J. concur
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs to appellant.
[1] Whereas two of the counts of rape were in violation of R.C.2907.02(A)(1)(b), the remaining counts of rape were in violation of R.C.2907.02(A)(2).
[2] The sexually violent predator specifications to the ten counts were dismissed upon appellee's motion.
[3] We have chosen the initials A.B. to designate the older of the two victims and the initials C.D. to designate the younger of the two victims.
[4] The videotape was transcribed.
[5] A. B.'s younger sister was 13 years old at the time.
[6] While, in its entry, the trial court concluded that the factors set forth in R.C. 2950.09(B)(2)(b), (c), (d), (e), (f), (h) and (i) were relevant, at the sexual predator hearing, the trial court, on the record, stated that (a) and (f) were not implicated.