DECISION
Defendant, William J. Small, appeals from judgments of the Franklin County Court of Common Pleas sentencing him on convictions for burglary and kidnapping and denying his petition for postconviction relief.
On June 15, 2000, defendant was indicted on two counts of burglary, in violation of R.C. 2911.12, two counts of kidnapping, in violation of R.C. 2905.01, and one count of aggravated burglary, in violation of R.C.2911.11. The case came for trial before a jury on September 13, 2000. The jury returned verdicts finding defendant guilty on counts one (burglary), two (burglary), four (aggravated burglary) and five (kidnapping), while finding him not guilty on count three (kidnapping). The trial court filed an entry on September 15, 2000, which included the following sentencing language: "Seven (7) years incarceration for Counts One and Two and Eight (8) years for Counts Four and Five at the OHIO DEPARTMENT OF REHABILITATION AND CORRECTION. This shall run consecutive with Counts One, Two, Four, and Five."
Defendant appealed his convictions, and in State v. Small (2001), Franklin App. No. 00AP-1149, this court affirmed in part and reversed in part the judgment of the trial court, remanding the case for a clarification of defendant's sentence. This court's prior decision in Small set forth the following background facts regarding defendant's convictions:
 From April 1999 to March 2000, appellant lived with his girlfriend, Maxcine Martin, and her four children, including her two sons Sam and Ira. When Martin and appellant's relationship deteriorated, Martin told appellant to move out. Appellant moved out and took most or all of his personal belongings with him. Martin told appellant several times not to return to the house. On the evening of April 10, 2000, as Martin was returning from a trip, appellant pushed his way through a doorway into Martin's house and took a Dreamcast video game system that had been purchased by appellant, Ira, and Sam, using Martin's money. Appellant stated that he was taking the Dreamcast "because I can." Appellant then left the house. A short time thereafter, appellant began calling Martin on the telephone several times per day, telling her that he would kill her, "mess" her up, blow up her car and neighborhood, and kill Ira. Martin did not call the police at this time.
 On April 29, 2000, Martin was returning home in the early morning when appellant jumped out of the bushes just before she got to her back door. Appellant struck Martin in the head, causing her to fall. He continued to hit her in the head and choke her. Sharon Berry, a neighbor, testified she saw appellant jump out from the bushes and strike Martin until appellant dragged Martin around the side of the house and out of her view. After striking and kicking Martin, appellant left without entering the residence. Appellant continued to make threats on the phone to Martin.
 On May 8, 2000, Andre Small, appellant's brother, knocked on Martin's door. After seeing Andre through the peephole, Martin opened her door. However, after she opened the door, appellant appeared beside the doorway and pushed his way into the house. He locked the door, pulled the blinds, and told Martin to sit on the couch and not move. After a conversation regarding the title to her vehicle, appellant told Martin to call his former girlfriend, Jean Campbell. After Martin called Campbell, appellant left Martin's house. Appellant later tele-phoned Martin and told her that he was going to kill her.
 On May 12, 2000, while driving a friend to cash a check, Martin saw Andre and picked him up. She took Andre back to her home and went upstairs to use the bathroom. While Martin was in the bathroom, appellant entered the house, went upstairs, and began hitting and kicking her. He then pushed her down the stairs and continued to hit and kick her. After Martin made it onto the couch, appellant picked up an electric "thunderball" and repeatedly hit her on the leg with it. Before leaving, appellant asked Martin if the person she took to cash the check was her "man." That evening, appellant telephoned Martin with more threats. Approximately a week later, Martin called the police when appellant continued to call her and threaten to kill Ira.
In Small, this court overruled defendant's first, second and fourth assignments of error, and sustained in part and overruled in part defendant's third assignment of error. Under his third assignment of error, defendant asserted in part that, because of ambiguous language in the court's sentencing entry, it was unclear whether the trial court intended for defendant to serve a total aggregate sentence of 15 years, 23 years or 30 years. The state conceded that the sentencing entry was unclear, and thus this court "remanded for clarification of appellant's sentence." Id.
On May 18, 2001, defendant filed with the trial court a petition for postconviction relief. On May 21, 2001, defendant filed an amended petition. On July 27, 2001, the trial court conducted a hearing on the petition. By decision and entry filed August 3, 2001, the trial court denied defendant's petition for postconviction relief.
On July 30, 2001, the trial court conducted a hearing concerning this court's remand. On August 3, 2001, the trial court filed a judgment entry, stating in relevant part:
 On July 30, 2001 a hearing was held pursuant to the Court of Appeals' decision which remanded the matter for clarification of the sentence. * * *
* * *
 The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12. In addition, the Court has weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14.
 The Court hereby imposes the following sentence: Seven (7) years for Count One, Seven (7) years for Count Two, Eight (8) years for Count Four and Eight (8) years for Count Five to be served at the OHIO DEPARTMENT OF REHABILITATION AND CORRECTION. The sentence for Count Five shall run concurrent to Counts One, Two, and Four. The sentence for Counts One, Two, and Four shall run consecutive with each other.
 The Court further finds that the consecutive sentences are necessary to protect the public from future crime and to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Court further finds that:
 The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 After imposing sentence, the court gave its finding and stated its reasons for the sentence as required by R.C. 2929.-19(B)(2)(a), (b), (c), (d), and (e). * * *
* * *
 The Court finds that the Defendant has Zero (0) days of jail credit and hereby certifies the time to the Ohio Department of Corrections. * * *
Defendant has appealed both the judgment entry of sentence (assigned on appeal as case No. 01AP-1008) and the trial court's entry denying his motion for postconviction relief (assigned on appeal as case No. 01AP-1007), raising the following four assignments of error for review:
ASSIGNMENT OF ERROR NO. 1
 The trial court erred by failing to grant Mr. Small's postconviction petition.
ASSIGNMENT OF ERROR NO. 2
 The trial court erred by giving consecutive sentences without making adequate findings on the record of the sentencing hearing.
ASSIGNMENT OF ERROR NO. 3
The trial court erred by imposing consecutive sentences.
ASSIGNMENT OF ERROR NO. 4
The trial court erred by failing to provide jail credit.
Under his first assignment of error, defendant asserts that the trial court erred in failing to grant his petition for postconviction relief. In his petition, defendant asserted that the state misrepresented to defense counsel that a potential witness, Jean Campbell, had a criminal record. Defendant contends that the testimony of Campbell would have been favorable to his case, but that defense counsel chose not to present the witness after the prosecutor informed counsel that a record check on an individual named Jean Campbell disclosed prior convictions.
In general, "absent an abuse of discretion, a reviewing court will not overrule the trial court's finding on a petition for postconviction relief which is supported by competent, credible evidence." State v. Mullins (1996), Franklin App. No. 96APA01-32. Further, "when a trial court rules on a postconviction petition after a hearing, a reviewing court must give deference to the trial court's findings of fact." Id.
At the hearing on the petition for postconviction relief, defendant called two witnesses, Roger Koeck, the attorney who represented defendant during his trial, and Jean Campbell. Based upon the testimony presented, the trial court made findings that the state disclosed Campbell as a potential witness in the case but that, prior to trial, the prosecutor informed Koeck that the state would not be calling Campbell as a witness. James Lowe, the prosecutor in defendant's case, also testified at the hearing, and he stated that his reason for not calling Campbell as a witness was based, in part, upon fear for the safety of the witness. The trial court further noted that Koeck was provided a tape by the prosecutor containing a telephone conversation between defendant and Campbell, in which defendant made incriminating statements. Lowe testified that, during the telephone conversation, defendant told Campbell that Maxcine Miller was "mad because [defendant] whipped her * * * ass. Jean then saying Maxine [sic] told her that [defendant] beat her up, and at one point [defendant] says, `I am not going to say anything else about what I'm gonna do because this might be tapped.'" (Tr. July 27, 2001 at 67.)
The prosecutor did not have the date of birth or social security number of Jean Campbell because she refused to talk with the prosecution. During defendant's trial, the prosecutor had a record check compiled for a "Jean Campbell," and the check revealed that the individual had prior convictions, including one for aggravated trafficking in drugs. The trial court found that this information was provided to defense counsel with the express provision that counsel would need to provide further information (i.e., date of birth, social security number) in order to determine if the record check was for the same Jean Campbell. When defense counsel asked Campbell about the record check, she indicated that she was not the individual listed, and that she did not have a criminal record. Defense counsel nevertheless declined to call Campbell as a witness.
According to defense counsel, the primary purpose in calling Campbell was to impeach one of the state's witnesses, Maxcine Martin. The trial court noted that defense counsel testified that he was hesitant about calling Campbell and that he had doubts about whether she was forthcoming. The court further found that defense counsel acknowledged he was provided a copy of the taped conversation between defendant and Campbell, that defendant had made admissions on the tape, and that counsel recognized the tape could be used against Campbell to show inconsistencies between the tape and her proposed testimony.
Defendant contends that, pursuant to Crim.R. 16(B)(1)(e), the state was responsible for providing a list of all witnesses and their criminal records. Crim.R. 16(B)(1)(e) states in part that, upon motion of defendant, the prosecuting attorney shall "furnish to the defendant a written list of the names * * * of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney." (Emphasis added.)
In the present case, the trial court found that the prosecutor complied with the provisions of Crim.R. 16, and that no misrepresentation was made. Regarding the issue of an alleged misrepresentation, the trial court found that the prosecutor stated to defense counsel that he would need further information to determine if the record check he ran was for the same Jean Campbell. A review of the record indicates that there was competent, credible evidence to support the trial court's finding. The prosecutor in defendant's case testified that he provided defense counsel with background checks of all the witnesses he intended to call. Further, the prosecutor attempted to obtain information from Jean Campbell, including her date of birth and social security number, but Campbell refused to cooperate. The prosecutor testified that he told defense counsel he had run a background check on a Jean Campbell, but "I informed him I did not know if that was the Jean Campbell that was in court." (Tr. July 27, 2001 at 64.) The prosecutor further testified, "I told him I needed more information to find out if that was her or not and asked if he could figure out if that was her. I told him I wouldn't be asking her about that record if it wasn't hers." (Tr. July 27, 2001 at 64.) Here, we find no error with the trial court's finding that the prosecutor did not make misrepresentations to defense counsel.
We also find no error with the trial court's determination that the prosecutor complied with the provisions of Crim.R. 16. While that rule requires a written list of the names and addresses of all witnesses the prosecuting attorney intends to call at trial, in the instant case the state did not call Jean Campbell as a witness, thereby resulting in no violation of Crim.R. 16(B)(1)(e). See State v. Davis (1996), Miami App. No. 95 CA 59 (where state did not call individual as witness, no violation of Crim.R. 16[B][1][e] shown); State v. Dearing (2001), Cuyahoga App. No. 78710 ("[a]s to the prosecutor's alleged failure to supply the criminal record of the victim's family members, since none were called to testify, the state did not have any obligation to supply such information pursuant to Crim.R. 16[B]").
Defendant also contends that the trial court erred in failing to find that defendant's trial counsel was ineffective in not calling Jean Campbell as a witness. Defendant claims that Campbell would have provided testimony that one of the state's witnesses, Miller, had a vendetta against defendant and that she planned to lie on the witness stand.
In order to establish a claim of ineffective assistance of trial counsel, a defendant must first demonstrate that counsel's performance fell below an objective standard, i.e., that it was deficient; in addition, defendant must show that such deficient performance prejudiced the defense. State v. DeBlanco (1998), Franklin App. No. 97APA08-1049.
In the present case, the trial court concluded that, even assuming trial counsel's performance to be deficient, defendant had not made a showing of prejudice. Specifically, the trial court noted trial counsel's testimony indicating he had doubts about Campbell, that he knew Campbell was defendant's former girlfriend, and that counsel was aware that the taped conversation, if played at trial, could be damaging to his client. At the postconviction hearing, the prosecutor testified that, "if Jean Campbell took the stand and I got to cross her, I thought it made my case much, much better." (Tr. July 27, 2001 at 67.) The prosecutor further stated that, although he decided not to call her to testify because of safety concerns, "[i]f she took the stand, I got [defendant's] statement where he admitted to beating up Maxine [sic] as well as something completely contradictory to what Mr. Koeck told me that Jean Campbell was going to testify to." (Tr. July 27, 2001 at 67.) Here, as noted by the state, had Campbell testified, the state could have impeached her testimony through the tape, and defendant's incriminating statements could also have been introduced. Upon review, we agree with the trial court's determination that defendant failed to show that his counsel's failure to call the witness resulted in prejudice.
Based upon the foregoing, defendant's first assignment of error is without merit and is overruled.
Defendant's second and third assignments of error are interrelated and will be considered together. Under these assignments of error, defendant contends that the trial court erred in imposing consecutive sentences and in imposing such sentences without making adequate findings on the record.
The claims raised by defendant under these assignments of error could have been raised in his initial appeal of the trial court's judgment. This court specifically noted in our prior decision that "appellant does not contest the trial court's analysis in imposing the sentences consecutively." Small, supra. Thus, defendant failed to raise at the first opportunity the issue of whether the trial court made adequate findings or erred in its decision to impose consecutive sentences. In general, the doctrine of res judicata prevents consideration of any claim that could have been raised in an earlier appeal. State v. Provitt (2001), Trumbull App. No. 2000-T-0143. Further, in our prior decision this court noted, "the trial court made findings under R.C. 2929.14(E)(4) and gave its reasons for selecting consecutive sentences pursuant to R.C. 2929.19(B)(2)(c)." Small, supra. We also note that, during the remand hearing, defense counsel did not challenge the propriety of the court's decision to impose consecutive sentences; rather, defense counsel merely requested that certain counts "be served consecutive to each other," and that two of the counts "be run concurrently to give him an aggregate of 15 years." (Tr. July 30, 2001 at 3.) Accordingly, based upon the circumstances of this case, we will not disturb the trial court's findings as to the imposition of consecutive sentences.
To the extent that defendant asserts that a sentence of 22 years is disproportionate to the crime, we note that defendant does not dispute that his sentence was within the statutorily permissible range. In general, "a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." McDougle v. Maxwell, Warden (1964), 1 Ohio St.2d 68, 69. This court previously found defendant's attempts to minimize his actions and portray them as mere incidents of "domestic violence" to be unpersuasive, finding instead that defendant's "continued actions of intimidation, threats, and physical and verbal violence justify the sentences imposed." Small, supra. Upon review, we find no merit to defendant's contention that the sentences imposed violated the constitutional prohibition against cruel and unusual punishment.
Based upon the foregoing, defendant's second and third assignments of error are overruled.
Under his fourth assignment of error, defendant asserts that the trial court erred by giving him zero days of jail time credit pursuant to R.C.2967.191. Defendant notes that the trial court's original sentencing entry of September 15, 2000, provided defendant with 98 days of jail time credit, while the subsequent entry by the court following remand indicated zero days of credit. Defendant contends that he is also entitled to credit for the days he spent in prison between the original sentence and his transportation to Franklin County for his postconviction and resentencing hearings. In response, the state concedes that the matter should be remanded on the issue of jail time credit. Based upon defendant's argument, and because the state acknowledges that the issue of jail time credit requires clarification, we sustain defendant's fourth assignment of error and remand for the trial court to properly determine this issue.
Accordingly, defendant's first, second and third assignments of error are overruled, defendant's fourth assignment of error is sustained, the judgment of the trial court in case No. 01AP-1007 denying defendant's petition for postconviction relief is affirmed, the judgment of the trial court in case No. 01AP-1008 clarifying defendant's sentence is affirmed in part and reversed in part, and this matter is remanded to the Franklin County Court of Common Pleas for further proceedings in accordance with law and consistent with this decision.
Judgment in case No. 01AP-1007 affirmed;
Judgment in case No. 01AP-1008 affirmed in part,
reversed in part, and cause remanded.
BRYANT and LAZARUS, JJ., concur.