OPINION
{¶ 1} Defendant Kelly M. Strayer appeals a judgment of the Municipal Court of Mount Vernon, Knox County, Ohio, which convicted and sentenced her for interference with custody in violation of R.C. 2919.23, after a jury found her guilty. Appellant assigns nine errors to the trial court:
 {¶ 2} "The trial court, under the color of State and Federal Law, erred, abused its discretion, completely denied appellant's Constitutional Rights and acted contrary to law when it failed to allow the appellant to discharge her attorney, after both attorney and appellant expressed their desire to have the attorney withdraw as counsel, in violation of the Fifth, Sixth and Fourteenth Amendments.
 {¶ 3} "The trial court denied appellant's Constitutional right to represent herself, in violation of the Sixth and Fourteenth amendment rights of the U.S. Constitution.
 {¶ 4} "The trial court erred, abused its discretion, and acted contrary to law when it denied appellant to present [sic] a defense, in violation of the sixth and fourteenth amendments and committed an act of surprise when it changed the definition of affirmative defense during the trial.
 {¶ 5} "The trial court erred, abused its discretion, and acted contrary to law when it summarily overruled appellant's motions, objections, exhibits or other issues raised by appellant, without benefit of the trial court either looking at said motion, objection, or other document or without giving an opportunity for defense to prepare an argument.
 {¶ 6} "The trial court erred, abused its discretion, and acted contrary to law when it sentenced appellant to the maximum sentence, although appellant has absolutely no criminal history, and is a disabled mother of three with serious health problems.
 {¶ 7} "The jury verdict was against the manifest weight of the evidence and was insufficient to sustain a guilty verdict.
 {¶ 8} "Appellant's counsel was ineffective regarding appellant's defense.
 {¶ 9} "The trial court subjected appellant to cruel and unusual punishment regarding the court's decision that appellant shall have no contact with her lawful husband, Rubin Szerlip, for a period of up to five years, which not only violates the Eighth Amendment in terms of the prohibition against `cruel and unusual punishment, but also violates her and her husband's first amendment rights in terms of practicing their religious beliefs."
 {¶ 10} "Because of the first two assignments of error, appellant was prevented from pursuing claims of selective prosecution against the prosecuting attorney, which she claims now within; prevented from pursuing the improper motives of the prosecutor, witnesses, and charging officer, which she claims now within; and prevented from impeaching the witnesses."
 {¶ 11} At trial, the State presented evidence appellant assisted Ruben Szerlip in concealing the whereabouts of Szerlip's twelve year old son from Szerlip's ex-wife, the child's mother, Carol. At the time of the alleged offense, appellant was not married to Ruben Szerlip, but the two later married.
 {¶ 12} At trial, Carol Szerlip testified her son had come home from a month's visitation with his father Rubin. On the same day the child returned, he disappeared. Carol Szerlip testified she was the residential parent and custodian of the parties' children. Carol Szerlip testified the child was gone several weeks. On cross, Carol Szerlip conceded she and Rubin Szerlip had often disagreed over visitation provisions in their divorce decree.
 {¶ 13} The State also called the child, who was fourteen at the time of the hearing. He testified when he was twelve years old, he ran away from his mother's home and went to his father's apartment. The child testified he and his father had discussed the matter beforehand, and Rubin Szerlip had told the child the apartment would be unlocked. The child testified both Rubin and appellant were present in the apartment on occasion.
 {¶ 14} After several days, appellant came to the apartment and told the child to get in the trunk of her car. They met Rubin Szerlip at a junkyard outside of town, and then Rubin and the child went to Columbus. The child stayed in Columbus with his father for approximately a week, during which time, he spoke to appellant several times on the telephone. The child testified he believed appellant knew he had run away, and knew he was in Columbus. The child testified appellant told him to get in the trunk because she did not want the police to see him in her car. The child testified on another occasion, he was speaking to appellant on the phone while he was in Columbus, and she told him he would have to call her back because the police had come to appellant's home.
 {¶ 15} The State also called several police officers, one of whom testified while speaking to appellant in her home, appellant told the officer she did not know where the child was and had had no contact with him. During the police visit, the telephone rang and the police officer, believing it to be Rubin Szerlip, asked several times for appellant to give him the phone. Instead, appellant hung the phone up.
 I, II {¶ 16} Appellant argues the trial court denied her constitutional rights when it refused to allow her to fire her attorney, and instead, to represent herself.
 {¶ 17} Appellant correctly points out the Sixth Amendment of the United States Constitution provides all persons with a right to counsel. Our Supreme Court has held the right to counsel does not include the right of an indigent defendant to choose his own counsel, see Thurstonv. Maxwell (1965), 3 Ohio St.2d 92. In Thurston, the Supreme Court noted that a court must balance the right to counsel with the efficient administration of justice, and a court need not permit a defendant to impede the orderly administration of justice by changing attorneys. A court should, however, permit an appointed counsel to withdraw if counsel and the defendant have such serious disagreements that their relationship is jeopardized.
 {¶ 18} Furthermore, the U.S. Supreme Court has recognized theSixth Amendment right to assistance of counsel provides a correlative right to dispense with an attorney, see Faretta v. California (1975),95 Sup. Ct. 2525, 45 L.Ed.2d 562. The Ohio Supreme Court has adopted the reasoning in Faretta, see State v. Gibson (1976), 45 Ohio St.2d 366,345 N.E.2d 399. If a trial court denies the right to self representation when properly invoked, the denial is per se reversible error, State v.Reed (1996), 74 Ohio St.3d 534, 660 N.E.2d 456. The trial court must make an inquiry to determine whether the defendant fully understands and intelligently waives the right to counsel, Gibson, supra.
 {¶ 19} If the trial court determines the accused fully understands and voluntarily waives his right to counsel, the court is not required to appoint counsel to assist him, State v. Keenan (1998), 81 Ohio St.3d 133,689 N.E.2d 929.
 {¶ 20} A court may also refuse an accused's request for self-representation if it is made in an untimely fashion and appears to be a delaying tactic, see State v. Cassano, 96 Ohio St.3d 94,2002-Ohio-3751, 772 N.E.2d 81. We note Cassano was a death penalty case.
 {¶ 21} In reviewing the case at bar, it appears the State filed charges against appellant on March 28, 2001. The Knox County Public Defender could not represent her because of a conflict of interest, but entered a limited notice of appearance to file a not guilty plea on behalf of appellant. Shortly thereafter, Harlow H. Walker was appointed counsel for appellant. Walker filed a motion for continuance and a jury demand.
 {¶ 22} On October 2, 2001, Walker filed a motion to withdraw as counsel. The trial court overruled Walker's motion to withdraw as counsel because a jury trial had been scheduled for October 4. The trial court did grant an additional continuance and re-set the trial date for January 17, 2002.
 {¶ 23} Ten days before the new jury trial date, Elseveth M. Baumgartner filed a notice of appearance and moved for a continuance on behalf of the appellant. The trial court again permitted a continuance to allow Baumgartner the opportunity to prepare for appellant's trial. On March 7, 2002, Baumgartner filed a notice of disqualification as co-counsel, pursuant to suspension by the Ohio Supreme Court. Because Baumgartner had been designated as co-counsel, and Walker had never been released, Walker represented appellant at the jury trial.
 {¶ 24} The State responds to appellant's arguments regarding self-representation by pointing out she did not request the court to permit her to act as her own attorney. Instead, appellant wanted the court to appoint the counsel of her choice.
 {¶ 25} We find the record demonstrates the court attempted to accommodate appellant's choice, to the extent of continuing the case for more than a year.
 {¶ 26} We find the trial court did not err in its handling of appellant's constitutional rights under the Fifth, Sixth, andFourteenth Amendments to the United States Constitution.
 {¶ 27} The first and second assignments of error are overruled.
 III {¶ 28} In her third assignment of error, appellant argues the trial court interfered with appellant's ability to present her defense, and changed the definition of an affirmative defense during the trial.
 {¶ 29} R.C. 2901.05 sets forth two types of affirmative defenses, a defense which is expressly designated as affirmative in the criminal rules, or a defense involving excuse or justification peculiarly within the knowledge of the accused. The appellant carries the burden of going forward with the affirmative defense, and must prove the defense by a preponderance of the evidence.
 {¶ 30} R.C. 2919.23 sets forth the affirmative defense for interference with custody, the crime with which appellant was charged. The statute provides it is an affirmative defense to a charge of enticing or taking, that the actor reasonably believed the actor's conduct was necessary to preserve the child's health or safety. Likewise, it is a affirmative defense to the charge of keeping or harboring, that the actor in good faith gave notice to law enforcement or judicial authorities within a reasonable time after the child came under the actor's protection.
 {¶ 31} Appellant was charged with keeping or harboring the minor child of Rubin and Carol Szerlip. She was not charged with enticing or taking the child. Thus, her only affirmative defense would be that she, in good faith, gave notice to law enforcement and judicial authorities within a reasonable time after the child came under her protection.
 {¶ 32} Appellant argues she planned to introduce evidence the child's safety and welfare was threatened while he was in his mother's custody, and officials did nothing to assist him. Appellant planned to present evidence the prosecutor and the police officers were guilty of selective prosecution and the prosecutor and police officers were prejudiced against appellant and Rubin Szerlip.
 {¶ 33} We have reviewed the record, and we find the trial court properly limited appellant's defenses to the statutory ones, and appropriately excluded irrelevant material.
 {¶ 34} The third assignment of error is overruled.
 IV {¶ 35} In her fourth assignment of error, appellant argues the trial court summarily overruled her motions, objections, evidentiary and other issues she raised without even reviewing the matters. Specifically, the trial court refused to admit certain faxes appellant allegedly sent to various law enforcement and court officials.
 {¶ 36} The State responds all the documents were inadmissible because they were irrelevant to the affirmative defenses, as stated in III, supra.
 {¶ 37} A trial court has broad discretion to admit or exclude evidence, and a reviewing court may not reverse absent an abuse of discretion, State v. Withers (1975), 44 Ohio St.2d 53. The Supreme Court has frequently defined the term abuse of discretion as implying the court's attitude is unreasonable, arbitrary, or unconscionable, State v.Adams (1980), 62 Ohio St.2d 151.
 {¶ 38} A trial court may exclude even relevant evidence if the prejudicial effect of the evidence outweighs its probative value, or if it would cause undue delay during a trial because of its cumulative nature, see Evid.R. 403.
 {¶ 39} The documents to which appellant alludes were not relevant to the legal defenses to the charge, but rather, were extraneous, see III, supra.
 {¶ 40} We find the trial court did not err in refusing to admit the evidence. The fourth assignment of error is overruled.
 V {¶ 41} In her fifth assignment of error, appellant challenges the court's imposition of the maximum sentence.
 {¶ 42} Appellant was convicted of a first degree misdemeanor, and was sentenced to 180 days in jail with 150 days suspended. The trial court imposed no fine.
 {¶ 43} R.C. 2929.22 sets forth guidelines for misdemeanor sentencing. Pursuant to statute, the court must consider the risk of recidivism, and the need for protecting the public from the risk; the nature and circumstances of the offense; the history, character and condition of the offender; and the offender's need for correctional or rehabilitative treatment. The court shall consider whether the offender is a repeat or dangerous offender, and the age of the victim at the time of the commission of the offense.
 {¶ 44} A trial court has discretion in imposing sentence, seeState v. Wagner (1992), 80 Ohio App.3d 88, 608 N.E.2d 852.
 {¶ 45} We have reviewed the record, and we find the trial court did not abuse its discretion in sentencing. Accordingly, the fifth assignment of error is overruled.
 VI {¶ 46} In her sixth assignment of error, appellant argues her conviction is against the sufficiency and manifest weight of the evidence.
 {¶ 47} The elements of the charge of interference with custody are: a person, without privilege to do so, or reckless in that regard, who knowingly entices, takes, keeps, or harbors from the parent, guardian, or custodian a child under eighteen.
 {¶ 48} In State v. Thompkins (1997), 78 Ohio St.3d 380, the Ohio Supreme Court explained the difference between sufficiency of the evidence and manifest weight. Sufficiency of the evidence refers to the legal standard the trial court applies in determining whether the State has presented sufficient evidence on each element of the crime charged to submit the matter to the jury. The court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. Sufficiency of the evidence is evidence which, if believed would convince the average mind, Thompkins at 386, citations deleted. Once a trial court has determined the evidence is sufficient, it submits the matter to the jury, which acts as the trier of fact. Weight of the evidence refers to the amount of evidence presented to the jury on one side of an issue. On review for manifest weight, this court must review the entire record, and determine whether when it resolved conflicts in the evidence, the jury lost its way and created a manifest miscarriage of justice. The Supreme Court has directed us to order a new trial only in an exceptional case where the evidence weighs heavily against the conviction, Thompkins at 387. This court must defer to the trier of fact regarding the weight of evidence and credibility of witnesses because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, State v. DeHass
(1967), 10 Ohio St. 230.
 {¶ 49} Upon review, we find there was sufficient, competent and credible evidence going to each element of the crime charged, such that we cannot say the jury lost its way and created a manifest miscarriage of justice. Accordingly, we find the jury's verdict is based upon sufficiency and manifest weight of the evidence.
 {¶ 50} The sixth assignment of error is overruled.
 VII {¶ 51} In her seventh assignment of error, appellant argues her counsel was ineffective.
 {¶ 52} In Strickland v. Washington (1984), 466 U.S. 668,104 Sup. Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court set forth a two-prong test requiring an accused to show both that counsel's representation falls below an objective standard of essential duty to the client, and also that the sub-standard performance prejudiced the accused's ability to receive a fair and reliable trial. Ohio has adopted the Strickland test, see State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. A licensed attorney is presumed to be competent, and thus, the accused bears the burden of demonstrating trial counsel was ineffective, see Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164. An appellant must show there exists a reasonable probability that, if it were not for counsel's errors, the result of the trial would have been different, Bradley, supra.
 {¶ 53} Appellant points to a single portion of the trial, in which defense counsel objected to a response Carol Szerlip made to one of counsel's questions. Counsel asked the court to instruct the witness not to give a narrative answer which might prejudice the appellant's rights. In response, the prosecutor noted appellant had opened the door to the line of questioning by commenting upon the relationship between Mr. and Mrs. Szerlip. The prosecutor argued the problem was Mrs. Szerlip on cross, did not respond to the question with the answer defense counsel wanted.
 {¶ 54} The court then instructed the witness, Mrs. Szerlip, to respond only to the specific questions she was asked, and to stop immediately if there was an objection. Tr. of Proceedings, Pages 58-59.
 {¶ 55} We find nothing in the above to be ineffective.
 {¶ 56} The seventh assignment of error is overruled.
 VIII {¶ 57} In her eighth assignment of error, appellant argues the trial court's sentence amounted to cruel and unusual punishment because it directed appellant should have no contact with her lawful husband for five years.
 {¶ 58} In McDoughle v. Maxwell (1964), 1 Ohio St.2d 68, the Ohio Supreme Court discussed the notion of cruel and unusual punishment as defined by the United States Supreme Court. Cruel and unusual punishment involves, for example, torture or lingering death, and must be a sanction which under the circumstances of the case would be considered shocking to any reasonable person, McDoughle, citations deleted. In McDougle the appellant was sentenced to less than the maximum sentence, and released on parole not once but three times. Each time he was returned to prison for violating the conditions of his parole.
 {¶ 59} The Ohio Supreme Court found granting a parole is a function of the Parole and Pardon Commission, as is the supervision of persons on parole. Release on parole requiring the authority's review a prisoner's conduct, mental and moral qualities and characteristics, knowledge of a trade or profession, family relationship, and any other matters which affect fitness to be at liberty without being a threat to society, Id.
 {¶ 60} The trial court placed appellant in intensely supervised probation.
 {¶ 61} The rules of intensely supervised probation were explained by the trial court, including the rule a probationer have no association with individuals on probation or parole. The court advised appellant she was to have no contact with Rubin Szerlip until the charges of interference with custody against him were dismissed, reduced, or amended, or if Rubin Szerlip is acquitted. The court informed appellant as long as the charges were pending or if Rubin Szerlip is convicted, the restriction would remain in effect.
 {¶ 62} We find the trial court's order is tailored in such a way as to conform to the requirements and purposes of the Ohio sentencing scheme.
 {¶ 63} The eighth assignment of error is overruled.
 IX {¶ 64} In her ninth assignment of error, appellant argues she had a right to pursue the claims stated in III, supra. Appellant asserts she acquiesced in the trial court's decision for fear of being jailed for contempt of court. Appellant urges us she did not invite the court's error.
 {¶ 65} Because of our disposition of III, we find this assignment of error has no merit.
 {¶ 66} The ninth assignment of error is overruled.
 {¶ 67} For the foregoing reasons, the judgment of the Municipal Court of Mount Vernon, Knox County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence.
By Gwin, P.J., Farmer, J., and Boggins, J., concur.