[Cite as *State v. Gifford*, 2022-Ohio-1620.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                  Court of Appeals No.  L-21-1201

    Appellee/Cross-appellant          Trial Court No.  CR0202001397

v.

Charles Edward Gifford                **DECISION AND JUDGMENT**

    Appellant/Cross-appellee          Decided:  May 13, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for
Appellee/Cross-appellant.

Michael H. Stahl, for Appellant/Cross-appellee.

* * * * *

**MAYLE, J.**

{¶ 1} In this accelerated appeal, defendant-appellant/cross-appellee, Charles

Gifford, appeals the September 30, 2021 judgment of the Lucas County Court of

Common Pleas, convicting him of two counts of robbery and sentencing him to a

minimum of four years in prison and a maximum of six years in prison on count 1, and four years in prison on count 2, to be served consecutively. The state cross-appeals, arguing that the trial court incorrectly calculated the indefinite prison term for counts 1 and 2. For the following reasons, we reverse the trial court judgment, in part, and affirm, in part. As explained below, we modify Gifford's sentence under the authority of R.C. 2953.08(G)(2).

## I.     Background

{¶ 2} Charles Gifford was indicted on two counts of aggravated robbery, violations of R.C. 2911.01(A)(1) and (C), first-degree felonies, after robbing a carryout on February 12, 2020, and again on February 14, 2020. He brandished a knife during both robberies.

{¶ 3} Gifford entered a plea of guilty to amended Counts 1 and 2, robbery, violations of R.C. 2911.02(A)(1) and (B), second-degree felonies. The court accepted Gifford's plea, made a finding of guilty, ordered a presentence investigation report, and continued the matter for sentencing.

{¶ 4} Because the offenses were qualifying offenses of the second degree, Gifford was sentenced under the Reagan Tokes Law to indefinite sentences. On each count, the trial court imposed a minimum sentence of four years and a maximum sentence of six years. Despite the state's recommendation that the court order the prison terms to be served concurrently, the court ordered that they be served consecutively. While not

2.

reflected in the sentencing entry, the trial court stated at the sentencing hearing that the imposition of consecutive sentences resulted in a total minimum term of eight years and a total maximum term of 12 years. In other words, the court added the two minimum terms together and added the maximum terms together in calculating the total minimum and maximum sentences.

{¶ 5} Gifford appealed, and assigned three errors for our review: (1) "[t]he trial court erred in ordering consecutive sentences," (2) "[a]ppellant's sentence to an indefinite term under R.C. 2929.144 violates the constitutional doctrine of the separation of powers," and (3) "[a]ppellant's sentence to an indefinite term under R.C. 2929.144 violates his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution." *State v. Gifford*, 6th Dist. Lucas No. L-20-1152, 2021-Ohio-2967, ¶ 7.

{¶ 6} We determined, sua sponte, that the trial court erred in calculating Gifford's total maximum sentence. We found that while the total minimum prison term was correctly calculated to be eight years, under R.C. 2929.144(B)(2), the total maximum prison term should have been calculated to be ten years—not 12. We remanded the matter for resentencing. We did not reach the merits of Gifford's assignments of error.

{¶ 7} On remand, at the sentencing hearing, the trial court again sentenced Gifford to four years on each count. It properly recognized that a four-year sentence would result in a two-year tail. It again ordered that the sentences be served consecutively, and it

3.

properly calculated the total minimum term to be eight years and the total maximum term to be ten years. This calculation was not included in the sentencing entry, however, which was journalized September 30, 2021. That entry simply states that a term of four years was imposed as to Count 1 and Count 2, and "Defendant's minimum state[d] prison term as to Count 1 is 4 years. The Defendant's maximum state[d] prison term as to count 1 is 6 years. The indefinite portion of the Defendant's prison term is 2 years." It does not state the effect of consecutive service of Counts 1 and 2.

{¶ 8} Gifford again appealed and again challenges the imposition of consecutive sentences and the constitutionality of the Reagan Tokes Law. He assigns two errors for our review:

> Assignment of Error I: The trial court erred in imposing consecutive sentences, as while there was a course of conduct leading to the two counts, nothing about the harm caused was "great or unusual" as required by R.C. 2929.14(C), the acts were not committed while awaiting trial or under supervision, and no history of criminal conduct was apparent[.]

> Assignment of Error II: The statutory requirement of the imposition of indeterminate sentences under R.C. 2929.144 invades the province of the judiciary and as such violates the separation of powers required by the Ohio Constitution, and due process under the Ohio and U.S. Constitutions[.]

4.

{¶ 9} The state cross-appealed, challenging the court's calculation of Gifford's total indefinite prison term. It assigns one error for our review:

> The trial court erred in the sentencing entry by failing to properly calculate the total indefinite prison term for counts 1 and 2.

## II.    Law and Analysis

{¶ 10} The parties have filed cross-appeals. Gifford challenges the imposition of consecutive sentences and the constitutionality of the sentencing scheme under which he was sentenced. The state argues that the trial court failed to properly calculate Gifford's total indefinite prison term. We address the parties' assignments of error in turn.

### A.  Consecutive Sentences

{¶ 11} In his first assignment of error, Gifford argues that the imposition of consecutive sentences was contrary to law. Specifically, he claims that the trial court's findings are not supported by the record because (1) while more than one armed robbery occurred, there is nothing in the record demonstrating that the multiple offenses were so great or unusual as to warrant consecutive sentences, and (2) he did not have a significant criminal history, so the court relied on his history of instability and drug and alcohol abuse as aggravating factors instead of as mitigating factors.

{¶ 12} The state responds that the trial court made the appropriate findings required to support the imposition of consecutive sentences, and ultimately concluded that (1) two robberies were committed, just days apart, during which Gifford threatened

5.

the store clerk with a knife; (2) both incidents were serious crimes with long-lasting psychological effects on the victims; (3) Gifford had a history of drug and alcohol abuse; and (4) overall, Gifford was unstable while out in the community.

{¶ 13} We review a challenge to a felony sentence under R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 14} Under R.C. 2929.14(C)(4), where a trial court imposes multiple prison terms for convictions of multiple offenses, it may require the offender to serve the prison terms consecutively if it finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and if it also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

6.

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 15} This statute requires the trial court to make three statutory findings before imposing consecutive sentences. *State v. Beasley*, 158 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252; *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26. It must find that (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *Beasley* at ¶ 252. "[T]he trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis in original.) *Id.* at ¶ 253, citing *Bonnell* at ¶ 37. While "a word-for-word recitation of the language of the statute is not required," a reviewing court

must be able to discern that the trial court engaged in the correct analysis and the record must contain evidence to support the trial court's findings. *Bonnell* at ¶ 29.

{¶ 16} Here, the trial court made all the required findings under R.C. 2929.14(C)(4), and specifically found R.C. 2929.14(C)(4)(b) to be applicable. It explained:

> [C]onsecutive sentences are necessary to protect the public from future crime or to punish the defendant and are not disproportionate to the seriousness of the defendant's conduct or the danger the defendant poses to the public. The court further finds that these offenses were committed as part of one or more courses of conduct and the harm caused was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

These findings are reflected in the sentencing entry.

{¶ 17} Gifford does not dispute that the trial court made the required findings. Rather, he argues that the trial court's findings are not supported by the record. He claims that the fact that he brandished a knife while committing the offenses does not make the crimes "more serious than any other armed robbery prohibited by statute." And while he notes that any crime victim will suffer a psychological impact, "nothing in the record suggests" that the victims here suffered "any 'great or unusual' psychological

8.

harm." He emphasizes that not only did the state *not* articulate any information that would support the trial court's finding, the state actually recommended concurrent sentences as part of the plea agreement.

{¶ 18} "A trial court's finding of great or unusual harm must be supported by actual evidence, not just the potential for such harm." *State v. Goings*, 6th Dist. Lucas No. L-13-1103, 2014-Ohio-2322, ¶ 20, citing *State v. Williams*, 6th Dist. Lucas Nos. L-15-1259, L-15-1260, 2016-Ohio-4905, ¶ 27. "Nonetheless, we may reverse only if we find by clear and convincing evidence that the finding of great or unusual harm is not supported by the record." *Id.*

{¶ 19} Here, we find by clear and convincing evidence that there is no evidence in the record to support a finding of great or unusual harm. While the trial court stated that there was "long-lasting psychological impact on the victims," there is no evidence in the record to support this conclusion. The PSI includes a victim impact statement. One of the categories examined as part of the victim impact statement is "psychological impact." That section is marked "N/A." The PSI also notes that there was no physical harm to the victims. The record suggests that letters were submitted to the court on behalf of Gifford; there is no indication that any victim submitted a letter to the court that may support the court's finding.

{¶ 20} In addition to the absence in the PSI of any indication of psychological impact, we note that both the prosecutor and the probation officer who conducted the PSI

9.

recommended concurrent sentences.  This is not to say that the trial court is bound to follow these recommendations; it is not.  Nevertheless, there must be actual evidence to support a finding of great or unusual harm, and none exists here.  *See State v. Hawley*, 2020-Ohio-1270, 153 N.E.3d 714, ¶ 16 (8th Dist.) ("After reviewing the record in this case, however, we find that the record does not clearly and convincingly support a finding under R.C. 2929.14(C)(4)(b) because the harm caused was not so great or unusual that a single prison term would not adequately reflect the seriousness of the offender's conduct.").

{¶ 21} Accordingly, we agree with Gifford, and find clearly and convincingly that the record does not support the sentencing court's finding of great or unusual harm under R.C. 2929.14(C)(4)(b).  We find Gifford's first assignment of error well-taken.  Under the authority granted to us under R.C. 2953.08(G)(2), we modify Gifford's sentence to reflect that his sentences on Counts 1 and 2 are to be served concurrently.  *See id.* at ¶ 30 (vacating consecutive portion of defendant's sentence and modifying his sentence to concurrent.).

### B.  Reagan Tokes Law

{¶ 22} Senate Bill 201—the Reagan Tokes Law—became effective on March 22, 2019.  The Law "significantly altered the sentencing structure for many of Ohio's most serious felonies" by implementing an indefinite sentencing system for non-life, first and second-degree felonies committed on or after its effective date.  *State v. Polley*, 6th Dist.

10.

Ottawa No. OT-19-039, 2020-Ohio-3213, ¶ 5, fn. 1. The Law specifies that the indefinite prison terms will consist of a minimum term, selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A), and a maximum term determined by formulas set forth in R.C. 2929.144. The Law establishes a presumptive release date from prison at the end of the minimum term, but the Ohio Department of Rehabilitation and Correction ("ODRC") may rebut the presumption if it determines, after a hearing, that one or more factors apply, including that the offender's conduct while incarcerated demonstrates that he continues to pose a threat to society. R.C. 2967.271(B), (C)(1), (2) and (3). If ODRC rebuts the presumption, the offender may remain incarcerated for a reasonable, additional period of time, determined by ODRC, but not to exceed the offender's maximum prison term. R.C. 2967.271(D).

{¶ 23} In his second assignment of error, Gifford argues that the imposition of indeterminate sentences under R.C. 2929.144 violates the doctrine of separation of powers and the right to due process. While his assignment of error encompasses both separation of powers and due process, his argument focuses solely on his separation-of-powers challenge. Gifford claims that the determination of guilt and sentencing of a defendant convicted of a crime are solely the province of the judiciary, thus the Reagan Tokes Law violates the province of the judiciary by allowing ODRC to rebut the presumption that an offender will be released after expiration of the minimum sentence

11.

"by presenting non-criminal bad acts before a non-judicial hearing authority." He asks that we declare the Law unconstitutional.

**{¶ 24}** The state ignores Gifford's specific claims, instead incorporating the full array of arguments that it has devised for responding to general constitutional challenges to the Reagan Tokes Law. We address only those arguments Gifford actually raises.

**{¶ 25}** "[T]he doctrine of separation of powers is 'implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government.'" *State ex rel. Bray v. Russell,* 89 Ohio St.3d 132, 134, 729 N.E.2d 359 (2000), quoting *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158-159, 503 N.E.2d 136 (1986). "The legislative has the sole right and power to enact laws, the judiciary to declare their meaning and application, and the executive to enforce their execution." *Chesnut v. Shane's Lessee,* 16 Ohio 599, 621 (1847). "'The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.'" *Bray* at 134, quoting *State ex rel. Bryant v. Akron Metro. Park Dist.*, 120 Ohio St. 464, 473, 166 N.E. 407 (1929).

**{¶ 26}** In connection with its role in declaring the "meaning and application" of laws, the judiciary is solely responsible for determining guilt and sentencing a defendant

12.

who has been convicted of a crime. *Id.* at 136. Gifford argues that because R.C. 2967.271 permits ODRC to rebut the presumption that an offender will be released after serving his or her minimum sentence for conduct, including non-criminal bad acts, allegedly committed while in prison (and presented to a non-judicial hearing authority), the statute deprives the judiciary of its exclusive authority and instead authorizes ODRC to increase a criminal defendant's sentence, thereby undermining judicial power and vesting ODRC with even more authority than county prosecutors. We disagree.

{¶ 27} Under the Reagan Tokes Law, it is the trial court that imposes both a minimum and maximum sentence. R.C. 2929.14 and 2929.144. While R.C. 2967.271(C) and (D) permit ODRC to "maintain" an offender's incarceration for "additional"—and "reasonable"—periods beyond the prisoner's presumptive minimum term, ODRC is *not* permitted to "increase" the prisoner's sentence beyond the maximum sentence imposed by the trial court. In this way, the Law is different than other legislation struck down by the Ohio Supreme Court as violating separation of powers, such as former R.C. 2967.11, which governed "bad time" and allowed ODRC to extend an offender's prison term beyond the original sentence imposed by the court for misconduct committed during incarceration. Here, any additional period of incarceration "shall not exceed the offender's maximum prison term." R.C. 2967.271(D). In this way, the authority granted to ODRC under the Reagan Tokes Law is more comparable to the authority granted to the parole board under the postrelease control statute, R.C. 2967.28, which the Ohio

13.

Supreme Court upheld in *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103, 1110 (2000).

{¶ 28} In *Woods,* the Ohio Supreme Court summarized the evolution of Ohio's sentencing statutes up to that point. It explained that Ohio enacted truth-in-sentencing laws, Senate Bill 2, to ensure that sentences imposed by trial judges were the sentences served, unless altered by the judge. "This was primarily accomplished by two methods: eliminating indefinite sentences and eliminating parole." *Id.* at 508. The court described that before S.B. 2, offenders rarely served the time to which they were actually sentenced because (1) indefinite sentences were prescribed for most serious felonies, (2) upon entering a correctional institution, an offender's sentence was automatically reduced by 30 percent for good behavior, and (3) the parole board "reviewed all prison sentences for disparity among offenders and attempted to abate inequities." *Id.* at 508. Under S.B. 2, offenders were sentenced to definite sentences, good time was significantly reduced and had to be earned, and the parole board no longer had authority to determine how long an offender stayed in prison.

{¶ 29} The Ohio Supreme Court explained that before S.B. 2, offenders were subject to parole if they were convicted of first- or second-degree felonies or third- or fourth-degree felonies that involved an act of violence, or if they had been previously been convicted of a crime of violence. Instead of parole, S.B. 2 introduced "post-release control." Similar to parole, a period of postrelease control is required for all offenders

14.

imprisoned "for first- or second-degree felonies, felony sex offenses, or a third-degree felony, not a felony sex offense, in which the offender caused or threatened to cause physical harm to a person." *Id.*, citing R.C. 2967.28(B). Post-release control may also be required at the discretion of the Parole Board for offenders imprisoned for other felonies. *Id.,* citing R.C. 2967.28(C).

{¶ 30} The Ohio Supreme Court recognized that R.C. 2967.28 gives the parole board significant discretion to impose conditions of release "designed to protect the public and to promote the releasee's successful reintegration into the community." *Id.*, citing Ohio Adm.Code 5120:1–1–17(A). R.C. 2967.28(D) sets forth factors for the APA to consider in determining whether to impose postrelease control and what conditions to impose. It even permits the board to impose residential sanctions including a prison term.

{¶ 31} Ultimately, the Ohio Supreme Court reversed the decision of this court—which had found that the postrelease control statute violated the separation of powers doctrine because the delegation of powers to the Adult Parole Authority usurped judicial authority—after it concluded that the delegation of power to the APA is no different for postrelease control than it was under the former system of parole. It compared the two systems.

{¶ 32} Under the parole system, the Ohio Supreme Court explained, a sentencing court imposed an indefinite sentence with the possibility of parole. It could control the maximum length of the prison sentence, but had no power over when parole might be

15.

granted or what conditions of parole would be imposed. Similarly, under postrelease control, the sentencing court imposes a sentence from the options available under the sentencing scheme, informs the offender that he or she may be subject to a period of postrelease control, and advises him or her that a violation of the conditions of postrelease control could result in additional time up to 50 percent of the original sentence.

{¶ 33} In *Woods,* the defendant argued that the postrelease control statute was similar to the bad time statute that was found unconstitutional in *Bray.* But the Ohio Supreme Court found that unlike bad time—where a crime committed while incarcerated resulted in an additional sentence not imposed by the trial court—the imposition of postrelease control is part of the judicially-imposed sentence. Also, it explained, postrelease control sanctions are aimed at behavior modification to facilitate reintegration into the community rather than mere punishment for an additional crime, as was the case with the bad-time statute. The court acknowledged that the sentencing judge has no control over how much time an offender may serve on postrelease control, but it observed that this was also true for parole. It noted that "for as long as parole has existed in Ohio, the executive branch * * * has had absolute discretion over that portion of an offender's sentence." *Id.* at 512, citing *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 4 N.E. 81 (1885). It concluded that "the APA's discretion in managing post-release control does

not impede the function of the judicial branch," therefore, the statute did not violate the separation of powers doctrine. *Id.* at 512.

{¶ 34} Since *Woods*, a unanimous decision of the Ohio Supreme Court reaffirmed the holding and reasoning in that case, recognizing that a trial court's imposition of postrelease-control in its original sentence "avoids any potential separation-of-powers problem." *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 19, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19.

{¶ 35} Moreover, it is important to note that *Woods* is not the first time that the Ohio Supreme Court has recognized the role of the executive branch in determining the circumstances under which a properly-sentenced offender should be released from prison. In *McDougle v. Maxwell*, 1 Ohio St.2d 68, 71, 203 N.E.2d 334, 337 (1964), the Ohio Supreme Court recognized that "[t]he granting of parole and the final release of prisoners is the function of the Pardon and Parole Commission * * * as is the supervision of those on parole * * *." It emphasized that "[w]hether a prisoner should be released before he has served his maximum sentence is an administrative not a judicial matter." *Id.*

{¶ 36} Here, there are strong similarities between the authority of the judiciary and executive branches under the Reagan Tokes Law and their authority under the systems of parole and postrelease control that the Ohio Supreme Court upheld in *Woods* and supported in *McDougle*. Under the Reagan Tokes Law, the *trial court* imposes a minimum sentence and a maximum sentence. While ODRC may rebut the presumption

17.

that an offender will be released after service of his or her minimum sentence (or on the presumptive earned early release date) if it demonstrates any of the circumstances enumerated in R.C. 2967.271(C), under no circumstances may it maintain an offender's incarceration beyond the maximum term imposed by the sentencing court. As such, the executive agency does not impede the function of the judicial branch, and the constitutional doctrine of separation of powers is not violated.

{¶ 37} Accordingly, we find Gifford's second assignment of error not well-taken.

### C. The State's Cross-Appeal

{¶ 38} In its cross-appeal, the state argues that the trial court erred in the sentencing entry by failing to properly calculate the total indefinite prison term for Counts 1 and 2. Specifically, it claims that the court in its sentencing entry failed to include in its calculation the prison term imposed for Count 2. We agree with the state that the sentencing entry did not properly reflect Gifford's total indefinite prison term because it failed to articulate the impact of consecutive service in calculating the total minimum and maximum sentences. However, because we have concluded that the trial court erred in imposing consecutive sentences, this issue is moot. The sentencing entry accurately reflects a minimum term of four years and a maximum term of six years.

{¶ 39} We dismiss the state's cross-appeal as moot.

18.

### III. Conclusion

**{¶ 40}** The trial court erred in imposing consecutive sentences. The record does not support its finding of great or unusual harm under R.C. 2929.14(C)(4)(b). We find Gifford's first assignment of error well-taken. Pursuant to our authority under R.C. 2953.08(G)(2), we modify Gifford's sentence and order that his sentences for Counts 1 and 2 be served concurrently.

**{¶ 41}** The Reagan Tokes Law does not violate principals of separation of powers because the trial court imposes both the minimum and maximum sentences. We find Gifford's second assignment of error not well-taken.

**{¶ 42}** We dismiss the state's cross-appeal as moot.

**{¶ 43}** We reverse the September 30, 2021 judgment of the Lucas County Court of Common Pleas insofar as it orders Gifford to serve his sentences for Counts 1 and 2 consecutively, but affirm in all other respects. We order that Gifford's sentences be served concurrently. We remand this case for the trial court to issue a judgment entry reflecting this modification as well as the remaining aspects of Gifford's sentence. The costs of this appeal are assessed to the state under App.R. 24.

Judgment reversed, in part,
and affirmed, in part,
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.   _____
              JUDGE

Christine E. Mayle, J.

Myron C. Duhart, P.J.    _____
CONCUR.            JUDGE


              _____
              JUDGE


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.