[Cite as *State v. Stenson*, 2022-Ohio-2072.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                        Court of Appeals No.  L-20-1074

        Appellee                                     Trial Court No.  CR0201901991

v.

Darius Stenson                                       **DECISION AND JUDGMENT**

        Appellant                                    Decided:  June 17, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Sara Al-Sorghali, Assistant Prosecuting Attorney, for appellee.

Adam H. Houser, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** This case is before the court on remand from the Ohio Supreme Court.

## I.    Background

**{¶ 2}** Defendant-appellant, Darius Stenson, appealed the March 20, 2020

judgment of the Lucas County Court of Common Pleas, convicting him of discharging a

firearm over prohibited premises and aggravated assault, and sentencing him to an indefinite prison term of a minimum of four years and a maximum of six years, to be served consecutively to a three-year prison term for a related specification, and a concurrent 17-month prison term for the aggravated assault conviction. He assigned three errors for our review:

1. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT SENTENCED APPELLANT PURSUANT TO SENATE BILL 201 ("S.B. 201") AND O.R.C. 2929.144 VIOLATES THE CONSTITUTIONAL DOCTRINE OF THE SEPARATION OF POWERS.

2. THE TRIAL COURT COMMITTED PLAIN ERROR BECAUSE THE JUDGMENT VIOLATES THE APPELLANT'S DUE PROCESS RIGHTS PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AS IT RELATES TO THE INDEFINITE SENTENCE.

3. THE APPELLANT'S SENTENCE IS EXCESSIVE BECAUSE IT FAILS TO ACHIEVE THE PURPOSES AND PRINCIPLES OF SENTENCING UNDER OHIO LAW.

{¶ 3} In a decision journalized on June 30, 2021, we affirmed the trial court judgment, however, we dismissed Stenson's first and second assignments of error—challenges to the constitutionality of the Reagan Tokes Law—on the basis that those

2.

assignments were not ripe for review pursuant to our decision in *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702. *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2021-Ohio-2256. Recognizing that our decision was in conflict with other Ohio appellate districts, we certified a conflict to the Ohio Supreme Court. The motion to certify was allowed. *State v. Stenson,* 164 Ohio St.3d 1455, 2021-Ohio-3438, 174 N.E.3d 801. The case was held pending a decision in *Maddox. Id.*

{¶ 4} The Ohio Supreme Court determined that challenges to the constitutionality of the Reagan Tokes Law are, in fact, ripe for review, and reversed *Maddox. State v. Maddox*, Slip Opinion No. 2022-Ohio-764. It, therefore, reversed and remanded *Stenson. In re Cases Held for the Decision in State v. Maddox*, Slip Opinion No. 2022-Ohio-1352. The merits of Stenson's first and second assignments of error are now before the court.

## II.     Law and Analysis

{¶ 5} Senate Bill 201—the Reagan Tokes Law—became effective on March 22, 2019. The Law "significantly altered the sentencing structure for many of Ohio's most serious felonies" by implementing an indefinite sentencing system for non-life, first and second-degree felonies committed on or after its effective date. *State v. Polley*, 6th Dist. Ottawa No. OT-19-039, 2020-Ohio-3213, 2020 WL 3032862, ¶ 5, fn. 1. The Law specifies that the indefinite prison terms will consist of a minimum term, selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A), and a maximum term determined by formulas set forth in R.C. 2929.144. The Law establishes a

3.

presumptive release date from prison at the end of the minimum term, but the Ohio Department of Rehabilitation and Correction ("ODRC") may rebut the presumption if it determines, after a hearing, that one or more factors apply, including that the offender's conduct while incarcerated demonstrates that he continues to pose a threat to society. R.C. 2967.271(B), (C)(1), (2) and (3). If ODRC rebuts the presumption, it may maintain the offender's incarceration for a reasonable, additional period of time, determined by ODRC, but not to exceed the offender's maximum prison term. R.C. 2967.271(D).

{¶ 6} In his first assignment of error, Stenson challenges the Reagan Tokes Law on the basis that it violates the constitutional doctrine of separation of powers. In his second assignment of error, he challenges the Law on due-process grounds. We consider both of Stenson's assignments in turn.

## A. Separation of Powers

{¶ 7} In his first assignment of error, Stenson argues that the Reagan Tokes Law violates the constitutional doctrine of separation of powers. He claims that if his sentence is extended beyond the minimum term, it will have occurred after an administrative hearing held by ODRC—not the trial court. Stenson insists that this sentencing structure divests the judicial branch of its authority to sentence individuals when they commit crimes, and instead vests the executive branch with this power.

**{¶ 8}** The state responds that the Reagan Tokes Law is similar to Ohio's historical systems of indefinite sentencing and parole that existed before Senate Bill 2, which were upheld by the Ohio Supreme Court in *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000) and *State ex rel. Attorney General v. Peters*, 43 Ohio St. 629, 4 N.E. 81 (1885).  It emphasizes that under the Reagan Tokes Law, the sentencing court is responsible for all aspects of sentencing, including choosing the minimum term, calculating the maximum term, and pronouncing and imposing the indefinite sentence.  It insists that the executive agency merely carries out the offender's sentence and cannot maintain the offender's incarceration beyond the range imposed by the sentencing court.

**{¶ 9}** We recently considered whether the Reagan Tokes Law violates the constitutional doctrine of separation of powers in *State v. Gifford*, 6th Dist. Lucas No. L-21-1201, 2022-Ohio-1620.  As we explained in *Gifford,* "the doctrine of separation of powers is 'implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government.'"  *State ex rel. Bray v. Russell,* 89 Ohio St.3d 132, 134, 729 N.E.2d 359 (2000), quoting *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158-159, 503 N.E.2d 136 (1986).  "The legislative has the sole right and power to enact laws, the judiciary to declare their meaning and application, and the executive to enforce their execution." *Chesnut v. Shane's Lessee,* 16 Ohio 599, 621 (1847).  "'The essential principle underlying the policy of the division of powers of government into three departments is

5.

that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.'" *Bray* at 134*,* quoting *State ex rel. Bryant v. Akron Metro. Park Dist.*, 120 Ohio St. 464, 473, 166 N.E. 407 (1929).

{¶ 10} In connection with its role in declaring the "meaning and application" of laws, the judiciary is solely responsible for determining guilt and sentencing a defendant who has been convicted of a crime. *Id.* at 136. Like the defendant in *Gifford,* Stenson argues that because R.C. 2967.271 permits ODRC to rebut the presumption that an offender will be released after serving his or her minimum sentence, the statute deprives the judiciary of its exclusive authority and instead authorizes ODRC to increase an offender's sentence, thereby undermining judicial power and vesting this authority in the ODRC. We disagree.

{¶ 11} Under the Reagan Tokes Law, the trial court imposes both a minimum and maximum sentence. R.C. 2929.14 and 2929.144. As we emphasized in *Gifford,* while R.C. 2967.271(C) and (D) permit ODRC to "maintain" an offender's incarceration for "additional"—and "reasonable"—periods beyond the prisoner's presumptive minimum term, ODRC is *not* permitted to "increase" the prisoner's sentence beyond the maximum sentence imposed by the trial court. In this way, the Law is different than other legislation struck down by the Ohio Supreme Court as violating separation of powers,

6.

such as former R.C. 2967.11, which governed "bad time" and allowed ODRC to extend an offender's prison term beyond the original sentence imposed by the court for misconduct committed during incarceration. Here, any additional period of incarceration "shall not exceed the offender's maximum prison term." R.C. 2967.271(D). As such, the authority granted to ODRC under the Reagan Tokes Law is more comparable to the authority granted to the parole board under the postrelease control statute, R.C. 2967.28, which the Ohio Supreme Court upheld in *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000).

{¶ 12} As we summarized in *Gifford,* the Ohio Supreme Court in *Woods* recounted the evolution of Ohio's sentencing statutes up to that point. It explained that Ohio enacted truth-in-sentencing laws, Senate Bill 2, to ensure that sentences imposed by trial judges were the sentences served, unless altered by the judge. "This was primarily accomplished by two methods: eliminating indefinite sentences and eliminating parole." *Id.* at 508. The court described that before S.B. 2, offenders rarely served the time to which they were sentenced because (1) indefinite sentences were prescribed for most serious felonies, (2) upon entering a correctional institution, an offender's sentence was automatically reduced by 30 percent for good behavior, and (3) the parole board "reviewed all prison sentences for disparity among offenders and attempted to abate inequities." *Id.* at 508. Under S.B. 2, offenders were sentenced to definite sentences,

7.

good time was significantly reduced and had to be earned, and the parole board no longer had authority to determine how long an offender stayed in prison.

{¶ 13} The Ohio Supreme Court explained that before S.B. 2, offenders were subject to parole if they were convicted of first- or second-degree felonies or third- or fourth-degree felonies that involved an act of violence, or if they had been previously been convicted of a crime of violence. Instead of parole, S.B. 2 introduced "post-release control." Similar to parole, a period of postrelease control is required for all offenders imprisoned "for first- or second-degree felonies, felony sex offenses, or a third-degree felony, not a felony sex offense, in which the offender caused or threatened to cause physical harm to a person." *Id.*, citing R.C. 2967.28(B). Post-release control may also be required at the discretion of the Parole Board for offenders imprisoned for other felonies. *Id.,* citing R.C. 2967.28(C).

{¶ 14} The Ohio Supreme Court recognized that R.C. 2967.28 gives the parole board significant discretion to impose conditions of release "designed to protect the public and to promote the releasee's successful reintegration into the community." *Id.*, citing Ohio Adm.Code 5120:1–1–17(A). R.C. 2967.28(D) sets forth factors for the APA to consider in determining whether to impose postrelease control and what conditions to impose. It even permits the board to impose residential sanctions including a prison term.

{¶ 15} Ultimately, the Ohio Supreme Court reversed the decision of this court—which had found that the postrelease control statute violated the separation of powers

8.

doctrine because the delegation of powers to the Adult Parole Authority usurped judicial authority—after it concluded that the delegation of power to the APA is no different for postrelease control than it was under the former system of parole. It compared the two systems.

{¶ 16} Under the parole system, the Ohio Supreme Court explained, a sentencing court imposed an indefinite sentence with the possibility of parole. It could control the maximum length of the prison sentence, but had no power over when parole might be granted or what conditions of parole would be imposed. Similarly, under postrelease control, the sentencing court imposes a sentence from the options available under the sentencing scheme, informs the offender that he or she may be subject to a period of postrelease control, and advises him or her that a violation of the conditions of postrelease control could result in additional time up to 50 percent of the original sentence.

{¶ 17} In *Woods,* the defendant argued that the postrelease control statute was similar to the bad time statute that was found unconstitutional in *Bray.* But the Ohio Supreme Court found that unlike bad time—where a crime committed while incarcerated resulted in an additional sentence not imposed by the trial court—the imposition of postrelease control is part of the judicially-imposed sentence. Also, it explained, postrelease control sanctions are aimed at behavior modification to facilitate reintegration into the community rather than mere punishment for an additional crime, as was the case

9.

with the bad-time statute. The court acknowledged that the sentencing judge has no control over how much time an offender may serve on postrelease control, but it observed that this was also true for parole. It noted that "for as long as parole has existed in Ohio, the executive branch * * * has had absolute discretion over that portion of an offender's sentence." *Id.* at 512, citing *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 4 N.E. 81 (1885). It concluded that "the APA's discretion in managing post-release control does not impede the function of the judicial branch," therefore, the statute did not violate the separation of powers doctrine. *Id.* at 512.

{¶ 18} As we recognized in *Gifford,* 6th Dist. Lucas No. L-21-1201, 2022-Ohio-1620, since *Woods*, a unanimous decision of the Ohio Supreme Court reaffirmed the holding and reasoning in that case, recognizing that a trial court's imposition of postrelease-control in its original sentence "avoids any potential separation-of-powers problem." *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 19, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19.

{¶ 19} Moreover, it is important to note that *Woods* is not the first time that the Ohio Supreme Court has recognized the role of the executive branch in determining the circumstances under which a properly-sentenced offender should be released from prison. In *McDougle v. Maxwell*, 1 Ohio St.2d 68, 71, 203 N.E.2d 334 (1964), the Ohio Supreme Court recognized that "[t]he granting of parole and the final release of prisoners is the function of the Pardon and Parole Commission * * * as is the supervision of those on

10.

parole * * *. It emphasized that "[w]hether a prisoner should be released before he has served his maximum sentence is an administrative not a judicial matter." *Id.*

{¶ 20} Here, there are strong similarities between the authority of the judiciary and executive branches under the Reagan Tokes Law and their authority under the systems of parole and postrelease control that the Ohio Supreme Court upheld in *Woods* and supported in *McDougle.* Under the Reagan Tokes Law, the *trial court* imposes a minimum sentence and a maximum sentence. While ODRC may rebut the presumption that an offender will be released after service of his or her minimum sentence (or on the presumptive earned early release date) if it demonstrates any of the circumstances enumerated in R.C. 2967.271(C), under no circumstances may it maintain an offender's incarceration beyond the maximum term imposed by the sentencing court. As such, the executive agency does not impede the function of the judicial branch, and the constitutional doctrine of separation of powers is not violated. *See Gifford* at ¶ 36.

{¶ 21} Accordingly, we find Stenson's first assignment of error not well-taken.

### B. Due Process

{¶ 22} In his second assignment of error, Stenson argues that he is entitled to due process protections under the Reagan Tokes Law because the provision for release after service of the minimum term creates a presumption of release and, therefore, a liberty interest. He claims that the Reagan Tokes Law does not afford the required due-process rights because ODRC is able to impose an additional prison term without providing

11.

offenders the essential due-process protections of notice and the opportunity to be heard in a meaningful time and manner.

{¶ 23} The state responds that the presumption of release after service of the minimum term is analogous to parole-release decisions and it claims that only minimal process is due offenders under the Reagan Tokes Law. It emphasizes that R.C. 2967.271(C) permits a hearing before ODRC may rebut the presumption of release and disagrees that the Law fails to provide the requisite due-process protections.

{¶ 24} The Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution guarantee procedural due process. "The Due Process Clause applies when government action deprives a person of liberty or property[.]" *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). If due process applies, the question becomes what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* At a minimum, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8, citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

{¶ 25} Because the Reagan Tokes Law creates a presumption of release after service of an offender's minimum sentence, we conclude that it creates a liberty interest

12.

implicating due process rights. *See Greenholtz* at 12; *See also Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (finding that inmates had liberty interest in state-created right to good-time credit, the extinguishment of which entitled them to due process to insure that the right "is not arbitrarily abrogated"). That leaves us to determine what process is due under the circumstances.

{¶ 26} Courts that have considered what process is due under the additional-term provisions of the Reagan Tokes Law often draw analogies between the Law and either (1) probation or parole *release* decisions, or (2) probation or parole *revocation* decisions. Neither release nor revocation decisions afford a defendant the "full panoply of rights due" in a criminal prosecution, however, the U.S. Supreme Court has determined that the latter requires greater procedural safeguards than the former. *Morrissey* at 480; *Greenholtz,* at 10.

{¶ 27} The Court concluded in *Morrissey*, where parole *revocation* was at issue, that due process required "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for

13.

revoking parole." *Morrissey* at 489. It concluded in *Greenholtz*, where parole *release* was at issue, that due process was afforded where an offender was given an opportunity to be heard, and in the case of denial of parole, information was provided concerning in what respects the offender fell short of qualifying for parole. *Id.* at 16.

{¶ 28} The U.S. Supreme Court explained in *Greenholtz* its rationale for differentiating between release and revocation decisions. In a parole revocation decision, the Court explained, an offender is threatened with the deprivation of the liberty he *has*; in a parole release decisions, the offender merely *desires* liberty. The U.S. Supreme Court recognized that parole-revocation determinations actually require two decisions: "whether the parolee in fact acted in violation of one or more conditions of parole and whether the parolee should be recommitted either for his or society's benefit." *Id.* at 9. It emphasized that the first step in a parole revocation decision "involves a wholly retrospective factual question." *Id.* at 9. Parole release decisions, on the other hand, are "more subtle and depend[] on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." (Internal citations and quotations omitted.) *Id.* at 9-10. "Unlike the revocation decision," when the board reviews a parole eligibility decision, "there is no set of facts which, if shown, mandate a decision favorable to the individual." *Id.* at 10. To the

contrary, the parole release decision is "subjective" and "predictive," and the statute "vests very broad discretion" in the parole board. *Id.* at 13.

{¶ 29} The Reagan Tokes Law creates a presumption that an offender will be released after service of his or her minimum sentence. It does not provide for a "purely subjective appraisal" whether release is advisable after service of the minimum sentence. Rather, under R.C. 2967.271(B) and (C), an Ohio offender *must* be released after service of the minimum sentence unless ODRC makes the purely factual finding that (1) the offender is a security level three or higher at the time of the hearing, or (2) the offender was placed in extended restrictive housing within the year preceding the hearing— classifications and decisions made pursuant to ODRC's own detailed sets of policies and procedures—*or* (3) during his incarceration, the offender committed rule violations that involved compromising the security of the institution, compromising the safety of the staff or inmates, or physical harm or the threat of physical harm to the staff, or committed a violation of law that was not prosecuted, and the infractions show that the offender has not been rehabilitated, *and* the offender's behavior while incarcerated demonstrates that he or she continues to pose a threat to society.

{¶ 30} In this way, the Reagan Tokes Law functions unlike the merely discretionary decision to release an offender on parole and more like a parole revocation decision. It requires two determinations under R.C. 2967.271(C)(1): (1) did the offender, during his incarceration, commit certain rule violations or unprosecuted

crimes?—"wholly retrospective factual question[s]"; and (2) does this behavior demonstrate that the offender still poses a threat to society? *Id.* at 8. For these reasons, the liberty interest at stake under the Reagan Tokes Law is more akin to the liberty interest at stake in a parole revocation decision rather than a parole release decision.

{¶ 31} Because the Reagan Tokes Law creates a liberty interest more akin to probation revocation decisions, this means that the type of process due in *Morrissey* is due under the additional-term provisions of the Law. Here, however, ODRC has not sought to extend Stenson's term beyond the presumptive minimum sentence. Stenson's challenge to the Reagan Tokes Law is necessarily a facial challenge. A facial challenge to a legislative act is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). To prevail on a facial challenge to a statute, rule, or ordinance, it must be shown that the law or rule cannot be applied constitutionally in any circumstances. *Toney v. City of Dayton,* 2017-Ohio-5618, 94 N.E.3d 179, ¶ 23 (2d Dist.), citing *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21. "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." *Harrold v. Collier,* 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37, citing *id.*

16.

**{¶ 32}** In considering the process due a parolee whose parole is being revoked, the U.S. Supreme Court in *Morrissey* acknowledged that most states have enacted legislation setting forth procedural requirements for parole revocation hearings, but others have done so by judicial decision. Although the legislation in the present case does not involve parole revocation, *Morrissey* is instructive because it necessarily implies that the specific procedural requirements applicable to protect a particular liberty interest need not be set forth in the legislation itself. In other words, *Morrissey* suggests that the Reagan Tokes Law may not be found to be unconstitutional, on its face, as violating due process merely because the specific procedures for invoking an additional period of incarceration are not set forth in the Law itself.

**{¶ 33}** Here, the Reagan Tokes Law states simply that ODRC may rebut the presumption of release at a "hearing." R.C. 2967.271(C) and (D). It provides no details concerning the type or timing of notice that must be provided to the offender, the procedures for the hearing (including pre-hearing disclosure of evidence, the type of evidence and witnesses that may be presented, or the offender's right to confront and cross-examine adverse witnesses), or the manner in which the offender must be apprised of ODRC's decision. But given that this is a facial challenge to the Law, it cannot be said at this juncture that the Law "cannot be applied constitutionally in any circumstances." Should the Law ultimately be applied in a manner that is unconstitutional, an offender would not be precluded from challenging the Law as applied. *See, e.g., Wilkinson v.*

17.

*Austin*, 545 U.S. 209, 230, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ("If an inmate were to demonstrate that the New Policy did not in practice operate in [a constitutionally-permissible] fashion, resulting in a cognizable injury, that could be the subject of an appropriate future challenge.").

{¶ 34} Accordingly, we find that the Reagan Tokes Law does not, on its face, violate the constitutional right to due process, and we find Stenson's second assignment of error not well-taken.

### III.    Conclusion

{¶ 35} We reject Stenson's challenges to the constitutionality of the Reagan Tokes Law.  We conclude that the Law does not violate the separation-of-powers doctrine and does not, on its face, deprive offenders of their right to due process.  We, therefore, find Stenson's first and second assignments of error not well-taken.

{¶ 36} We affirm the March 20, 2020 judgment of the Lucas County Court of Common Pleas.  Stenson is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

State of Ohio
v. Darius Stenson
L-20-1074

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                         _____
                                                   JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, J.                         _____
CONCUR.                                              JUDGE

                                              _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.